**FMC CORPORATION and Monsanto Company, Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee,**

and

**Rotem Fertilizers Ltd., Defendant–Appellee.**

No. 92–1366.

United States Court of Appeals, Federal Circuit.

Aug. 19, 1993.

---

Joseph H. Price, Gibson, Dunn & Crutcher, Washington, DC, argued for plaintiffs-appellants.

Jeffrey M. Telep, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for defendant-appellee, The U.S. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Of Counsel were Velta A. Melnbrencis, Stephen J. Powell and Berniece A. Browne. Also on the brief was Jeffrey B. Denning, Attorney–Advisor, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel. Dennis James, Jr., Whitman & Ransom, of Washington, DC, argued for defendant-appellee, Rotem Fertilizers Ltd.

Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and MAYER, Circuit Judge.

RICH, Circuit Judge.

FMC Corporation and Monsanto Company (collectively FMC), domestic producers of industrial phosphoric acid (IPA), appeal the May 15, 1992 final determination of the United States Court of International Trade (CIT), refusing to preliminarily enjoin the liquidation of IPA entries exported from Israel by Rotem Fertilizers Ltd. and its predecessor corporation, Negev Phosphate, Ltd. (Negev). 792 F.Supp. 1285. For the reasons set forth below, we affirm.

## I. BACKGROUND

In 1987, the International Trade Administration of the United States Department of Commerce (Commerce) issued an antidumping duty order and a countervailing duty order directed against IPA exported from Israel.[1] The orders declared all unliquidated entries or warehouse withdrawals of IPA liable for possible assessment of antidumping and countervailing duties. Subsequently, Commerce conducted three administrative reviews of the antidumping duty order pursuant to Section 751 of the Tariff Act of 1930, 19 U.S.C. § 1675 (1988).[2] These reviews cov-

---

1. 52 Fed.Reg. 31,057 (August 19, 1987).

2. A section 751 review is conducted after an antidumping order is in place in order to determine the amount of duty assessed on merchandise entering the country later than one year after publication of the antidumping order.

ered two manufacturers/exporters, Negev and Haifa Chemicals. Although Commerce found dumping margins for Haifa Chemicals in each of the three administrative reviews, it determined that the dumping margin for Negev was zero. FMC submitted no challenge to the results of the first two reviews.[3] FMC did, however, challenge the results with respect to Negev in the third administrative review.[4]

The third administrative review of the antidumping order was initiated on September 24, 1990, covering Negev's IPA exports during the period August 1, 1989, through July 31, 1990 (1989–90 review period). As part of this review, Commerce served Negev with an antidumping questionnaire addressing the 1989–90 exports. Negev's completed questionnaire response was received on March 28, 1991 and a copy was sent to FMC.

On April 29, 1991, FMC requested that Commerce conduct a cost of production (COP) investigation, i.e., an investigation to determine whether Negev's home market IPA sales in Israel were made at prices below the cost of producing its IPA, pursuant to 19 U.S.C. § 1677b(b). In support of its request, FMC submitted a consultant's report prepared by an outside expert, containing a worldwide study of the IPA industry. The consultant's report was based on data gathered before or during 1986 and included estimates of Negev's cost of producing IPA. FMC argued that the consultant's COP estimates, when compared to Negev's questionnaire response, demonstrated that Negev was selling IPA at a price below Negev's COP. Commerce rejected FMC's request for a COP investigation, finding that there was no reasonable basis to believe Negev was making home market sales at prices below the COP. FMC subsequently requested that Commerce reconsider conducting a COP investigation and grant FMC an opportunity to supplement the record with additional information to support its argument. Commerce denied both requests.

On December 27, 1991, Commerce issued the preliminary results of the third adminis-

trative review, determining that the dumping margin for Negev was zero.[5] Commerce also disclosed its intention to revoke the antidumping duty order with respect to Negev if, in the final determination, Negev's dumping margin remained at zero for the third consecutive year and Negev agreed to an immediate suspension of liquidation of its future entries and a reinstatement of the antidumping duty order if Negev resumed less-than-fair value sales of IPA. *See* 19 C.F.R. 353.25 (1992).

On January 27, 1992, FMC renewed its request for a COP investigation of Negev's IPA home market sales. FMC included additional evidence in the form of Negev's 1990 financial statement which showed that Negev had operated at a loss during that year. FMC argued that the financial statement, together with the consultant's 1986 report, provided a reasonable basis for Commerce to conduct a COP investigation. This request was effectively rejected by Commerce's issuance of the final results of the third administrative review. In its final determination, Commerce concluded that Negev had made no sales at less-than-fair value during the 1989–90 review period and assessed a zero percent margin. Accordingly, in light of Commerce's finding that Negev was not dumping for three consecutive years, the antidumping duty order was revoked against Negev. The order, however, remained in effect against Haifa Chemical.

On April 29, 1992, FMC filed suit in the CIT challenging the administrative review determination and requesting the CIT to issue an order compelling Commerce to conduct a COP investigation of Negev. In addition, FMC moved for a preliminary injunction to prevent Commerce from instructing Customs to liquidate entries of IPA exported from Israel by Negev, pending the CIT's decision on the merits. The CIT denied FMC's motion because FMC failed to establish that it would be irreparably harmed absent the issuance of a preliminary injunction and because FMC did not show a likelihood of success in proving the merits of its case.

**3.** 56 Fed.Reg. 33,248 (July 19, 1991).

**4.** 57 Fed.Reg. 10,008 (March 23, 1992).

**5.** 56 Fed.Reg. 67,059 (December 27, 1991).

FMC appealed here.[6] The appeal was opposed by the U.S. Government and Rotem Fertilizers, Ltd. (collectively "the government").

## II. ISSUE

The issue before us is whether the CIT abused its discretion when it denied FMC's preliminary injunction motion.

## III. DISCUSSION

■ To obtain the extraordinary relief of an injunction prior to trial, the movant carries the burden to establish a right thereto in light of the following factors: 1) that the movant is likely to succeed on the merits at trial; 2) that it will suffer irreparable harm if preliminary relief is not granted; 3) that the balance of the hardships tips in the movant's favor; and 4) that a preliminary injunction will not be contrary to the public interest. *New England Braiding Co. Inc. v. A.W. Chesterton Co.,* 970 F.2d 878, 882, 23 USPQ2d 1622, 1625 (Fed.Cir.1992); *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.,* 908 F.2d 951, 952, 15 USPQ2d 1469, 1470 (Fed.Cir.1990); *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir. 1983). No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial. *Chrysler Motors,* 908 F.2d at 952, 15 USPQ2d at 1470. As a basic proposition, the matter lies largely within the sound discretion of the CIT. *Id.; Asociacion Colombiana de Exportadores de Flores v. United States,* 916 F.2d 1571, 1578 (Fed.Cir.1990).

■ Once a request for a preliminary injunction is denied, the movant faces a heavy burden of showing that the trial court abused its discretion, committed an error of law, or seriously misjudged the evidence. The trial court's discretion is not absolute, however, and must be measured against the standards governing the issuance of injunctions. *Black & Decker, Inc. v. Hoover Service Center,* 886 F.2d 1285, 1290, 12 USPQ2d 1250, 1254 (Fed. Cir.1989), (*citing Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1579, 219 USPQ 686, 690–91 (Fed.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983)).

■ In this case, the CIT held that FMC failed to establish that it would be irreparably harmed absent the grant of a preliminary injunction or that it was likely to succeed in proving the merits of its case. Although we find that the CIT's finding on irreparable harm is clearly erroneous, we nonetheless find that the CIT did not abuse its discretion in making the ultimate determination that a preliminary injunction is not warranted. Absent a showing that a movant is likely to succeed on the merits, we question whether the movant can ever be entitled to a preliminary injunction unless some extraordinary injury or strong public interest is also shown. Here, it would not be an abuse of the CIT's discretion to base its holding on FMC's failure to establish a likelihood of success on the merits and FMC's failure to establish that the magnitude of its injury is sufficient to tip the balance of equity in its favor in view of its failure to prove a likelihood of success on the merits.

### A. *Likelihood of Success*

In the course of denying FMC's motion for a preliminary injunction, the CIT held that FMC failed to establish that it was likely to succeed in proving the merits of its case. We find no legal error, misjudgment of the evidence, or abuse of discretion in the CIT's finding.

FMC's CIT complaint contains three counts: first, that Commerce used an incorrect standard to conclude that it was not obligated to conduct a COP investigation; second, that the administrative record contained substantial evidence to support a finding that there are reasonable grounds to believe or suspect that Negev had made sales

---

6. A temporary injunction issued August 27, 1992 by a motions panel of this court prevented the liquidation of Negev's entries pending this appeal.

below its COP; and, third, that Commerce's refusal to accept supplemental information regarding FMC's allegation of sales at below COP prices denied FMC its right to procedural due process.

The relevant statutory language, with respect to the first count in FMC's complaint, is 19 U.S.C. § 1677b(b) (1988):

> Whenever the administering authority has *reasonable grounds to believe or suspect* that sales in the home market of the country of exportation, or, as appropriate, to countries other than the United States, have been made at prices which represent less than the cost of producing the merchandise in question, *it shall determine* whether, in fact, such sales were made at less than the cost of producing the merchandise.... [Emphasis ours.]

Thus, Commerce is required to conduct a COP investigation if it has *reasonable grounds to believe or suspect* that home market sales were made at prices below the COP; and it is *Commerce* who must determine whether sales were made at less than the COP of the merchandise.

The CIT has interpreted the language "reasonable grounds" to mean that Commerce must have a "specific and objective" basis for suspecting or believing that sales are being made at prices below the COP before initiating a COP investigation. *Al Tech Specialty Steel Corp. v. United States,* 575 F.Supp. 1277, 1282 (1983), *aff'd on other grounds,* 745 F.2d 632 (Fed.Cir.1984). What is reasonable, of course, will vary with and must take into consideration the circumstances of each case. However, overly generalized and ambiguous statements, outdated information, and mere speculation will not suffice. After careful examination of the record, we find that Commerce applied the correct standard of review.[7]

Nor do we find any clear error or misjudgment of the evidence in the CIT's conclusion that FMC is not likely to succeed in proving the second count of its complaint. Commerce rejected the consultant's report as a basis for initiating a COP investigation because it was based on outdated information which was at least three-years old, and because no effort had been made to update the study with current information made available through Negev's 1991 questionnaire response. Instead of incorporating current information, FMC relied on a number of assumptions made in 1986 that, by virtue of the 1991 questionnaire response, were no longer valid. For example, FMC failed to evaluate the effect of the change in Negev's production capacity from 1986 to 1989 and to make adjustments for any increases or decreases in costs resulting from the economies of scale. The production capacity assumed in the consultant's report proved to be substantially less than the production capacity during the 1989–90 review period. Obviously, a change in the production capacity is one factor that will affect an increase or decrease in the COP.

Commerce also rejected the consultant's report because it failed to index the COP for inflation. FMC refused to adjust the 1986 cost data arguing instead that Israel's high inflation rate (according to the International Monetary Fund) provides a conservative estimate that understates the actual COP. However, FMC's reliance on rising inflation fails to take into account that costs associated with the manufacture of IPA do not necessarily follow the IMF exchange rate.

Commerce also rejected Negev's 1990 financial statement as a basis for initiating a COP investigation because it did not constitute an accurate picture of Negev's IPA home market sales. Although Negev suffered a loss in 1990, the loss was minimal

---

**7.** The language in Commerce's decision seems to imply two standards: (1) that FMC must provide "reasonable grounds to believe or suspect" and (2) that FMC must prove "actual sales" at below the COP. However, FMC is not required under the statute to prove actual sales below the COP. That is a job for Commerce. To require otherwise would go against the grain of common sense because if FMC can prove actual sales at below Negev's COP, then a COP investigation would not be necessary. However, for the reasons discussed *infra,* the evidence proffered by FMC is insufficient to establish the reasonable grounds required for Commerce to conduct a COP investigation. The CIT reviewed Commerce's decision and, articulating the proper standard, found that FMC failed to establish a reasonable basis to suspect that Negev was selling IPA at prices below its COP.

and, more importantly, did not demonstrate that Negev sold IPA at less than COP because Negev's sales of IPA comprised only a small percentage of its total annual sales. Furthermore, Negev had shown significant profits in 1989 which covered one half of the 1989–90 review period.

Accordingly, we must agree with the CIT's conclusion as to this count. FMC's evidence relied on too many assumptions which not only changed over time, but were later proven to be wrong. Its evidence was speculative at best and failed to satisfy the statutory language requiring specific and objective evidence to establish a reasonable basis to suspect that Negev is selling at prices below its COP.

Finally, with respect to the third count in FMC's complaint, FMC argues that Commerce's refusal to grant additional time to submit supplemental information on the COP issue violated its procedural due process rights. According to FMC, its due process rights were violated because Commerce took too long to send out its questionnaire and Negev took too long to respond, thereby allowing the 120 days permitted under 19 C.F.R. § 353.31(c) for a domestic company to request a COP investigation to elapse. It is unclear to this court how FMC's due process rights were violated. 19 C.F.R. § 353.31(c) provides:

> (c) *Time limits for certain allegations.* (1) The Secretary will not consider any allegation of sales below the cost of production that is submitted by the petitioner . . . later than:
>
> . . . .
>
> (ii) In an administrative review under § 353.22(c) or (f), 120 days after the date of publication of the notice of initiation of the review, *unless a relevant response is, in the Secretary's view, untimely or incomplete, in which case the Secretary will determine the time limit;* . . . . [Emphasis ours.]

The regulation grants the Secretary the discretion to extend the 120 day time limit if, for example, a questionnaire response is late. This affords the petitioner sufficient time to prepare its COP allegation. The relevant inquiry here must be whether the 31 days granted to FMC, after the receipt of Negev's questionnaire response, was sufficient to allow FMC to prepare its COP allegation. FMC seems to imply that it was not, stating:

> If Commerce had promptly sent out its questionnaire and Negev had responded within the normal 60–day period, FMC would have had close to 60 days to deal with the cost-of-production issue.

FMC's rationale mistakenly presumes that the questionnaire is sent out on the day the notice of initiation of the review is published.[8] FMC has failed to provide any evidence that this is the required or customary practice followed by Commerce. Furthermore, it conflicts with 19 C.F.R. § 353.31(b)(1) which states:

> (b) *Questionnaire responses and other submissions on request.* (1) Notwithstanding paragraph (a) of this section, *the Secretary may request any person to submit factual information at any time during a proceeding.* [Emphasis ours.]

Thus, FMC's argument that it was prejudiced because it was entitled to 60 days, instead of the 31 days granted, for preparation of its response is not supported by the record or the regulations. As a result, FMC has failed to persuade us that the CIT erred in finding that Commerce did not violate FMC's procedural due process rights by rejecting further submissions of supplemental information.

Accordingly, the CIT's finding that FMC failed to establish a likelihood of success on the merits of its case is not clearly erroneous.

### B. *Irreparable Harm*

The CIT also found that FMC failed to establish that it would be irreparably harmed

---

8. Although not cited in its brief, FMC is apparently relying on 19 C.F.R. § 353.31(b)(4) which states

> (4) Subject to the other provisions of paragraph (b) of this section, questionnaire responses in administrative reviews must be submitted not later than 60 days after the date of receipt of the questionnaire.

However, this paragraph is subject to paragraph (b)(1) which, as discussed above, allows the Secretary to send out a questionnaire at any time during the proceeding.

absent the issuance of a preliminary injunction concluding:

> Plaintiffs have failed to present any evidence that they will suffer immediate irreparable harm if this Court does not issue a preliminary injunction. While it is true that plaintiffs may suffer harm through continued liquidation of entries of Negev's [IPA], this potential harm is not irreparable because plaintiffs will still have the possibility of prospective relief in regard to future entries of Negev's [IPA] if they are successful on the merits of their case.

FMC's appeal with respect to this issue can be broken down into two parts. First, it argues that the CIT made an erroneous finding in view of this court's holding in *Zenith* that the liquidation of section 751 entries pending appeal constitutes irreparable injury. 710 F.2d at 810; *see also Timken Co. v. United States,* 569 F.Supp. 65, 69 (CIT 1983) ("unless liquidation is enjoined Timken will forever lose its statutory right to challenge the alleged failure of the ITA to assess antidumping duties against those entries"). Second, it argues that the harm suffered is sufficient to warrant the issuance of an injunction. We agree with FMC as to the former, but disagree as to the latter.

FMC failed to proffer any evidence to establish irreparable harm or the extent thereof, choosing instead to rely exclusively on *Zenith.* Although FMC's minimal effort may have been sufficient to establish that irreparable harm exists, FMC's failure to submit any other evidence to establish the extent of that harm now proves fatal to its appeal. Nowhere in *Zenith* does it suggest that the harm suffered by FMC entitles FMC to an injunction absent a showing of likelihood of success on the merits.

In *Zenith,* a domestic producer sought a preliminary injunction enjoining the liquidation of entries of merchandise pending its judicial challenge to a section 751 annual review determination by Commerce. The CIT refused to grant the injunction on the ground that Zenith failed to establish that it would be irreparably harmed in the absence of the injunction. The court, focusing on the effective elimination of Zenith's remedy with respect to the entries of a section 751 review period, determined that the harm suffered by Zenith was indeed irreparable. It, therefore, reversed the CIT's irreparable harm determination and remanded the case for further consideration along with the other pertinent factors to determine whether a preliminary injunction should issue.

With respect to its irreparable harm determination, the *Zenith* court concluded that:

> [L]iquidation would indeed eliminate the only remedy available to Zenith for an incorrect review determination by depriving the trial court of the ability to assess dumping duties on Zenith's competitors in accordance with a correct margin on entries in the '79–'80 review period.

*Zenith,* 710 F.2d at 810.

Furthermore, the court recognized that the harm caused by liquidating the entries at issue would not be simply economic[9] but would extend to Zenith's statutory right to obtain meaningful judicial review of the determination. In light of 19 U.S.C. §§ 1516a and 1516a(c)(1) which call for immediate liquidation, the court noted:

> The statutory scheme has no provision permitting reliquidation in this case or imposition of higher dumping duties after liquidation if Zenith is successful on the merits. Once liquidation occurs, a subsequent decision by the trial court on the merits of Zenith's challenge can have no effect on entries of television receivers during the '79–'80 review period.... Not even prospective relief will be available to

---

9. The economic harm suffered is an indirect consequence of Zenith's competitors avoiding the payment of duties. The court stated that Zenith had a "strong, continuing, commercial-competitive stake in assuring that its competing importers will not escape the monetary sanctions deliberately imposed by Congress. Defeat of that strong congressionally recognized competitive interest and the abrogation of effective judicial review are sufficient irreparable injury here." *Id.* However, the court, recognizing that Zenith failed to submit evidence of a specific competitive injury to itself, acknowledged that such evidence would establish a more compelling showing of irreparable injury warranting injunctive relief. *Zenith,* 710 F.2d at 809.

Zenith for entries in the '79–'80 review period once liquidation occurs.

*Id.*

The emphasis throughout *Zenith* is on the liquidation of entries for a specific review period and the potential loss of plaintiff's remedy, i.e., the right to have the administrative determination reviewed, with respect to that specific period. This right is also threatened in this case. Absent the issuance of a preliminary injunction, FMC will be deprived of meaningful judicial review of the administrative determination that there was no dumping for the 1989–90 review period. Here, although there may be prospective relief available as to future entries, there is no prospective relief—or, otherwise stated, meaningful relief that can be applied retroactively subsequent to an appeal—to correct an improper liquidation of the 1989–90 entries. To this extent, we disagree with the CIT's determination and find that FMC has made a showing of some irreparable harm.

However, FMC's burden does not end here. Although the CIT erred when it failed to recognize that there would be some irreparable harm, FMC fails to convince us that the CIT abused its discretion in reaching the ultimate determination that a preliminary injunction is not warranted. In the present case, the CIT found no likelihood of success on the merits and concluded that an injunction should not issue. The failure to prove likelihood of success on the merits presents a formidable obstacle to the granting of an injunction, particularly where the injury factor is weak. *See Zenith*, 710 F.2d at 812 (Nies, J., concurring). And FMC's sole reliance on *Zenith* simply does not overcome this obstacle.

Moreover, FMC's reliance on *Zenith* actually weakens its position. The decision in *Zenith* to remand was supported by the court's finding of a continuous ongoing injury from 1971 through the '79–'80 review period. Commerce had reconsidered the merit of the

1971 injury determination, but refused to revoke it. The court stated that

> the finding of injury from dumped merchandise to the domestic television industry, which includes Zenith, is therefore presumed to have continuing efficacy now and throughout the challenged '79–'80 review period.

*Id.* at 811.[10] The court specifically noted that this distinguishes *Zenith* from other cases and, indeed, it distinguishes *Zenith* from this case. FMC has not shown an ongoing injury caused by Negev. On the contrary, there are two uncontested findings by Commerce of zero dumping margins by Negev.

Accordingly, FMC's reliance on *Zenith* does not establish that the harm suffered by FMC *is sufficient* to outweigh its failure to establish a likelihood of success on the merits. Absent such a showing, we cannot find that the CIT abused its discretion in this case.

### C. *Balance of Hardships and the Public Interest*

These factors were not addressed in the CIT's opinion and, therefore, we need not address them. In any event, FMC has failed to show that the CIT's failure to address these factors was an error of law.

### IV. CONCLUSION

In view of the foregoing, we hold that the CIT did not abuse its discretion when it denied the preliminary injunction. Accordingly, the CIT's judgment is

AFFIRMED.

---

**10.** The *Zenith* court held that a finding of continuous ongoing injury is a factor to consider in making a preliminary injunction determination. The court suggests that it supports a finding of irreparable harm through the petitioner's loss of a competitive position caused by the continuous dumping. Along the same lines, such a showing (i.e., continuous dumping), if it suggests a pattern of conduct or that dumping will continue during the period of review, may be probative on whether the petitioner is likely to succeed on the merits.