Slip Op. 00-42

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

------------------------------------------------------ x
DEFENDERS OF WILDLIFE, *ET AL.*,      :

        Plaintiffs,      :

                                    Court No. 00-02-00060

        v.      :

PENELOPE D. DALTON, *ET AL.*,      :

        Defendants.      :
------------------------------------------------------ x

[Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction denied.]

Decided:  April 18, 2000

Defenders of Wildlife (William J. Snape, III) for Plaintiffs.

David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lucius B. Lau) for Defendants.

## OPINION

**BARZILAY, JUDGE:**

## I.  INTRODUCTION

The motion before the court challenges the affirmative finding by defendant,[1] Penelope. D. Dalton,

that Mexico is in compliance with the International Dolphin Conservation Protection Act's

---

[1]  By delegation, the Secretary of Commerce has given Penelope D. Dalton, in her official capacity as the Assistant Administrator for Fisheries for the National Marine Fisheries Service an organization of the National Oceanic and Atmospheric Administration of the United States Department of Commerce, the authority to render these findings.  Throughout the opinion the Court refers to Defendants collectively.

requirements; and therefore, that the embargo against tuna from Mexico's vessels in the Eastern Pacific ocean should be lifted. *See* Notice Concerning Affirmative Finding for Mexico at 1 (filed Apr. 13, 2000). Plaintiffs allege irreparable injury from the likely extinction of three depleted stocks of dolphins. On April 12, 2000, the Court held an evidentiary hearing on the pending motion.[2]  On April 14, 2000, the Court issued an order denying the motion.[3]  Pursuant to 28 U.S.C. § 2645(c)(2) (1994), this opinion sets forth the facts and reasons for that decision.  Since this motion involves an embargo, the court exercises jurisdiction under 28 U.S.C. § 1581(i)(3).

## II.  BACKGROUND

For reasons that are not fully understood, in the Eastern Pacific Ocean ("EPO" or "ETP") and that area alone, yellowfin tuna swim beneath dolphins.  Because dolphins surface for air, fisherman have used the sighting of them to fish for tuna.  In the fishing method at issue here, a net is dropped, known as a purse seine, to encircle the dolphins and tuna and when it is brought to the surface any number of dolphins may be caught inside of the netting.  While some dolphins may be able to be released alive, others may suffocate by the time a release can be made.  Although certain safety devices in the nets have decreased the number of dolphin mortalities associated with the purse seine method, dolphin deaths continue to occur.

---

[2]  Plaintiffs' objection to paragraph 20 of the Declaration of Frank E. Loy is sustained as to the first sentence only.  Defendants' objections to Addenda 1, 2 and 7 are overruled.  Defendants' objections to Addenda 3 and 8 are sustained.

[3]  The Court is aware of the Federal Circuit's pronouncement that "a district court should refrain from entering an appealable order until the findings of facts and conclusions of law *upon which the district court intends the losing party to base any appeal also are entered*." *See Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1450-51 (Fed. Cir. 1988) (emphasis in original).  The Court specifically asked the parties at the hearing if this procedure would aid them and both responded affirmatively.  The Court also endeavored to issue the written opinion as quickly as possible.

Partially in response to the unique association between dolphin and yellowfin tuna in the EPO, Congress passed the Marine Mammal Protection Act ("MMPA") in 1972 (16 U.S.C. § 1361 et. seq.). Congress has amended the MMPA several times, most recently by the International Dolphin Conservation Program Act ("IDCPA") (Pub. L. No. 105-42, 111 Stat. 1122 (1997)). In part, the IDCPA implements the Declaration of Panama, a binding commitment to protect dolphins and other species and to conserve and manage tuna in the EPO. *See* IDCPA § 2(a)(1). Pursuant to section 6 of the IDCPA, the Secretary of State secured a binding international agreement, the International Dolphin Conservation Program ("International Program"), that entered into force on February 15, 1999. The National Marine Fisheries Service ("NMFS"), an organization within the National Oceanic and Atmospheric Administration of the Department of Commerce noticed and requested comments on its proposed rules to implement the IDCPA. *See* 64 Fed. Reg. 31806 (1999). Plaintiffs instituted the present action, in part, to challenge the interim final rule promulgated by the NMFS. *See* 65 Fed. Reg. 30 (2000) (to be codified at 15 C.F.R. § 902 and 50 C.F.R. § 216). Once the Plaintiffs learned of the pending lifting of the embargo on Mexican tuna they brought the motion currently before the Court.

## III. DISCUSSION

A preliminary injunction is an extraordinary remedy that should be granted sparingly. *See American Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 298, 515 F. Supp. 47, 52 (1981). Plaintiffs bear "the burden of persuasion, and a heavy burden of producing evidence . . . ." *Id.* To prevail, Plaintiffs must show "(1) that [they] will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardships on all the parties favors the [movant]." *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983) (citing *S.J. Stile Assoc., Ltd.*

*v. Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981)).  While no one factor is necessarily dispositive, "the

absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack

of it assigned by the other factors, to justify denial." *See FMC Corp. v. United States*, 3 F.3d 424, 427

(Fed. Cir. 1993) (citation omitted).

*A.  Irreparable Injury*

Plaintiffs allege irreparable injury if three stocks of dolphins become extinct.[4]  *See Pls.' Mot. for

a Temporary Restraining Order and/or Preliminary Injunction* at 13 ("*Pls.' Br.*").  Plaintiffs have

not submitted any evidence, however, that changing the status quo by lifting the embargo on

Mexican tuna caught in the EPO will increase the number of dolphin mortalities to the extent that extinction

is a possibility.  As a matter of fact, Plaintiffs presented no factual evidence that more dolphin deaths would

occur as a result of lifting the embargo, but relied on the increase in the permitted number of mortalities

contained in the interim rule to argue irreparable injury.[5]  It may be that such evidence does not exist, or

that by its nature it would be speculative.  But the Court cannot issue the relief Plaintiffs request without it.[6]

---

[4]  These dolphin stocks are the northeastern offshore spotted dolphin, the eastern spinner dolphin and the coastal spotted dolphin.

[5]  At the hearing the Court repeatedly asked where the evidence of irreparable injury was in the record.  Plaintiffs' counsel could only point to his own belief that irreparable injury would occur.

[6]  Throughout the opinion, the Court refers to 5,000 dolphin mortalities as the maximum acceptable number by Congress.  *See* IDCPA §§ 2(4), 6.  The Court recognizes that Congress required the Secretary of State to seek to secure an international agreement with a commitment to progressively reduce the number of dolphin mortalities to a level approaching zero.  *See* IDCPA § 6.  However, it is clear that Congress authorized, at least for the first year of any agreement's operation, up to 5,000 dolphin mortalities.  Thus, one way to show irreparable injury would be for Plaintiffs to provide evidence that this number would be exceeded, or that a specific stock's assigned mortality limits would be exceeded.

While Plaintiffs allege that three depleted dolphin stocks will be pushed to extinction, the only evidence they have provided to support this contention is an NMFS report. The report, however, does not state that the dolphin stocks are declining, but rather that two were not recovering at expected rates or at all and that one may be continuing to decline. *See Pls.' Br.* Addendum 6 at 23 (Report to Congress, Southwest Fisheries Science Center, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, U.S. Department of Commerce (March 25, 1999)). For purposes of establishing irreparable injury the NMFS report establishes only that three dolphin stocks are depleted. It does not provide any information on the effects that ending the embargo will have.

Plaintiffs have also attempted to show irreparable injury through affidavits. None of the affidavits Plaintiffs submitted contain evidence that the three depleted dolphin species will be harmed by lifting the embargo. For instance, one declarant refers to the harm he will suffer from the final rule "because it contains several inadequacies, which, if enacted, would continue to allow foreign vessels the opportunity to harvest yellowfin tuna at the expense of dolphins in the ETP." *See* Declaration of Christopher Croft at ¶ 16. Yet, this is exactly what the IDCPA permits by accepting a limit of 5,000 dolphin mortalities. Another declarant states that she "would be devastated if the depleted species of dolphins were to perish from this earth, and feel[s] injured when needless dolphin deaths occur." *See* Declaration of Rina Rodriguez at ¶ 8. However, in discussing injury for standing purposes, the Supreme Court has held that emotional harm is not cognizable. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485 (1982). The final declarant states that he will be harmed because "the regulations in question ensure future dolphin mortality to ETP species that have already been listed as depleted." *See* Declaration of Craig VanNote at ¶ 16. The VanNote and Croft declaration suffer from the same deficiencies.

Finally, Plaintiffs' argument that irreparable injury is presumed in environmental cases is unavailing. Plaintiffs cite to a California district court's statement that unnecessary deaths of marine mammals constitutes irreparable injury. *See Earth Island Inst. v. Mosbacher*, 785 F. Supp. 826, 835 (N.D. Cal. 1992), *vacated sub nom. Earth Island Inst. v. Brown*, 28 F.3d 76 (9th Cir. 1994). This case was decided before the IDCPA's enactment, by a district court in another circuit, and the Ninth Circuit vacated the decision for lack of jurisdiction. Plaintiffs' reliance, therefore, on the statement regarding irreparable injury is misplaced. Furthermore, even if the case represented the controlling law of this circuit, Congress has decided that 5,000 dolphin deaths is currently acceptable. Thus, even if a presumption of irreparable injury exists, Plaintiffs would have to show that the number accepted by Congress was in danger of being exceeded by ending the embargo.[7]

*B. Public Interest*

In addition to Plaintiffs' failure to produce evidence showing irreparable injury, the Defendants have come forward with evidence demonstrating that if the embargo remains in place, the international agreement will likely fall apart, leaving the dolphins in the EPO with no protection.[8]

---

[7] Likewise, the Court finds Plaintiffs' reliance on *Kokechik Fishermen's Ass'n v. Secretary of Commerce*, 839 F.2d 795 (D.C. Cir. 1988), unpersuasive. The issue in *Kokechik* was whether the Secretary of Commerce erred by issuing a permit allowing incidental takings of one species knowing other protected species not covered by the permit would also be taken. *See Kokechik*, 839 F.2d at 800. The court held the Secretary's issuance of the permit was contrary to the MMPA's requirements. *See id.* at 802. In the present case Congress amended the MMPA to authorize the taking of up to 5,000 dolphins. Thus, the reasoning in *Kokechik* is not applicable to the case in its present posture where Plaintiffs have not produced evidence on the effects of lifting the embargo.

[8] While the Defendants' evidence is speculative, Defendants do not bear the burdens of proof or persuasion. Furthermore, as Defendants' counsel aptly stated at the hearing, any evidence addressed to events that will happen in the future is necessarily speculative, thereby making the foundation for the speculation highly relevant. Both declarants are highly competent to speculate on the effects continuing the embargo might have. Mr. Loy is the Under Secretary for Global Affairs at the United States Department of State. In this capacity, Mr. Loy has the

*See* Declaration of Frank E. Loy at ¶¶ 15, 19; Declaration of David A. Balton at ¶¶ 23-24. At the hearing, Mr. Balton testified to the remarkable success international cooperation has had in reducing dolphin mortalities in the EPO. Mr. Balton testified that access to the United States' market was offered as an incentive to signatory nations of a voluntary regime concluded in 1992, the La Jolla agreement. Between 1992 and 1993, the first year that the La Jolla agreement was in effect, the number of dolphin mortalities fell from 15,550 to 3,716. The number of dolphin mortalities from 1993 to 1999 has remained fairly steady, with the last two years seeing further declines.

The Balton declaration presents particularly compelling evidence of the delicate state of the International Program. Plaintiffs' counsel admitted at the hearing that the international regime, indeed, is fragile, but posited that another ten weeks of continuing the embargo until the merits of the case were resolved would have little negative effect. Mr. Balton flatly rejected this contention in response to a question from the Court on the subject. Mr. Balton stated that it was his belief that any continuation of the embargo once an affirmative determination is made would have a deleterious effect on the continuation of the International Program.

Additionally, the Defendants cite to a number of ongoing efforts to establish international fishery management regimes that could be harmed if an injunction issues. *See* Declaration of Frank E. Loy at ¶ 16-18. Defendants believe that if the embargo remains in place the United States' ability to conduct foreign policy, particularly with respect to establishing environmental regimes, will be damaged. While the Court recognizes this as an important factor in the public interest showing,

---

principal responsibility to manage the development and implementation of U.S foreign policy regarding global environmental matters. *See* Declaration of Frank E. Loy at ¶ 1. Mr. Balton is the Director of the Office of Marine Conservation at the United States Department of State. In this capacity, Mr. Balton participates in the formulation, development and implementation of U.S. foreign policy concerning the conservation and management of living marine resources. *See* Declaration of David A. Balton at ¶ 1.

because of the evidence concerning the International Program presented by Defendants, the Court does not address it further.

## C. Balancing the Harms

In light of the findings by the Court on Plaintiffs' lack of evidence concerning irreparable injury and the strong showing by the Defendants concerning the public interest factor, the Court does not address Plaintiffs' ultimate likelihood of success on the merits. *See FMC Corp.*, 3 F.3d at 427; *see also Warner-Lambert, Co. v. United States*, No. 00-01-00001, 2000 WL 364168, at *2 (CIT Apr. 4, 2000). Rather, the Court proceeds directly to a balancing of the harms likely to be suffered by the parties if an injunction issued.

Plaintiffs do not dispute the importance of maintaining the International Program, but argue that an injunction to maintain the embargo until the merits can be resolved will best serve the public interest in protecting dolphins. Defendants strongly disagree. Weighing the likelihood of harm asserted by Defendants against that alleged by the Plaintiffs persuades the Court that issuance of an injunction could cause a great deal more harm than good. The Defendants have provided sufficient evidence that maintenance of a multilateral conservation agreement such as the International Program better serves environmental interests than unilateral measures by the United States. Even though the Defendants cannot with certainty predict that the multilateral agreement in place will dissolve if the Court enjoined the lifting of the embargo, the magnitude of the harm that would be caused cautions against such action. Further, there is no indication that dolphin deaths will stop because the embargo remains in place. In fact, dolphin deaths have occurred throughout the duration of the embargo. As Defendants have pointed out, it was the conclusion of an international regime that led to a precipitous decline and stabilization of dolphin mortalities.

The disagreement, to a certain extent, between the parties is over what action will best protect

the dolphins in the EPO. At the hearing, Defendants' counsel expressed his desire to expedite this case to a decision on the merits. The Court agrees that this case should be expedited and will work with the parties to ensure that it proceeds swiftly. Based upon the lack of irreparable injury and the evidence Defendants have presented, the Court finds that the public interest in protecting the environment, and in particular reducing dolphin mortalities in the EPO, is best served if no injunctive relief is granted.

### IV. CONCLUSION

The Court finds that Plaintiffs have failed to show irreparable injury. Furthermore, the Court finds that based on the evidence presented by Defendants on the public interest that the equities weigh against issuing an injunction. The April 14 order denying the Motion for a Temporary Restraining Order and/or Preliminary Injunction is hereby incorporated into this opinion.

Dated: _____                                   _____
    New York, NY                                                     Judith M. Barzilay
                                                              Judge