**Rodney M. FIELDS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–200 C.**

United States Court of Federal Claims.

Aug. 28, 2002.

Michael G. Prestia, Gulfport, Mississippi, for the plaintiff.

Sean C. Griffin,[1] Washington, D.C., with whom were David W. Cohen, Acting Assistant Attorney General, David M. Cohen, Director, Kathryn A. Bleecker, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, for the defendant.

## OPINION

BUSH, Judge.

## BACKGROUND

In this matter, plaintiff alleges a breach of contract; breach of an implied-in-fact contract; negligent and fraudulent misrepresentation; and requests punitive damages. This matter stems from the Air Force's award of a requirements contract to perform cytology services and is currently before the court on defendant's motion to dismiss and motion for summary judgment and plaintiff's cross-motion for summary judgment. For the following reasons, the defendant's motion to dismiss and motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

### I. Factual Background

On September 13, 1996, the Air Force awarded plaintiff, Mr. Rodney M. Fields, a requirements contract, number F22600–96–D0016, to perform cytology services for the Keesler Air Force Base (Keesler) near Biloxi, Mississippi. This contract provided for Mr. Fields to process Pap smears for the Keesler medical facilities and the surrounding Air Force bases.

---

1. As of August 29, 2001, *Carolyn J. Craig*, Washington, D.C., Commercial Litigation Branch, Civil Division, United States Department of Justice, for the defendant.

The contract consisted of a base year and three one-year option periods. The base year ran from October 1, 1996 through September 30, 1997. Option year 1 spanned from October 1, 1997 through September 30, 1998; option year 2 spanned from October 1, 1998, though September 30, 1999; and option year 3 spanned from October 1, 1999 through September 30, 2000. The contract paid a certain amount for each slide Mr. Fields processed, and the amount paid per slide escalated each year. The contract's estimated value ranged from $87,696 for the base year to $96,768 for the final option year. The contract expressly states that these options "may be exercised by the unilateral right of the Government." Defendant's Appendix at 14.

The contract incorporates by reference 48 CFR § 52.249–12 (April 1984). Plaintiff's Appendix at 19. Pursuant to this provision, the government was permitted to terminate the contract "any time upon at least 15 days' written notice by the Contracting Officer to the Contractor." This same provision allowed the contractor to terminate the contract upon 15 days' notice with the approval of the contracting officer.

In July 1998, the Air Force gave Mr. Fields written notice that it was exercising the second option year on the contract. The option ran from October 1998 to September 1999, and it had an estimated value of $93,744. At about the same time, however, budget cuts were forcing Keesler to review its contracts to reduce expenses. As a result of this review, Keesler decided to terminate two of its three cytology contracts, including Mr. Fields', and it ceased providing cytology services to Air Force bases outside its region.

On August 17, 1998, Keesler informed Mr. Fields and the other cytologists of the upcoming terminations. To permit an orderly transition, however, Keesler offered Mr. Fields and another cytologist, Thelma Cooper, the opportunity to divide one contract between them until December 30, 1998, at which time the Air Force would terminate the contract. On August 19, 1998, Mr. Fields wrote Keesler a letter accepting this offer,

and he and Ms. Cooper divided the cytology work between them until December 1998.

On December 3, 1998, the Air Force issued Mr. Fields written notice that it was terminating his contract for convenience, effective December 31, 1998. The termination advised Mr. Fields of the necessity of submitting a proposal for termination costs by December 20. Mr. Fields acknowledged receipt of the termination on December 7, 1998.

On December 16, 1998, Mr. Fields submitted his cost proposal, wherein he demanded that the government pay him the estimated costs for the remainder of the second option year, plus the total estimated costs for the third option year, for a total of $167,076. Before the contracting officer issued a decision regarding this cost proposal, Mr. Fields submitted a claim seeking $181,212 in damages. The contracting officer denied Mr. Fields' claim on March 17, 1999 for lack of proof regarding damages. This suit followed.

In this action, Mr. Fields alleges that the termination constitutes both a breach of contract and tortious breach of contract, and he claims that the Air Force committed a fraudulent and negligent misrepresentation against him. As compensation, he seeks $181,212 for breach of contract, $2 million for tortious breach of contract, $2 million for misrepresentation, and $5 million for punitive damages, for a total of $9 million in compensation.

## II. Procedural Background

Mr. Fields filed his complaint in this matter on April 6, 1999. The government filed its answer on June 7, 1999. The government filed its motion to dismiss and motion for summary judgment on June 2, 2000. Also on this date, the government filed its proposed findings of uncontroverted fact. On June 22, 2000, the plaintiff filed his response to defendant's motion to dismiss and motion for summary judgment and plaintiff's cross-motion for summary judgment. Also on this date, plaintiff filed his statement of genuine issues and proposed findings of uncontroverted fact. On July 14, 2000, the government filed its statement of genuine issues and its reply to plaintiff's opposition to defendant's motion to

dismiss and motion for summary judgment and defendant's opposition to plaintiff's cross-motion for summary judgment. On August 2, 2000, Mr. Fields filed his amended proposed findings of uncontroverted fact.

## DISCUSSION

### I. Standard of Review

#### A. Motion for Summary Judgment

The government has moved for summary judgment pursuant to Rule 56(b) of the United States Court of Federal Claims (RCFC) on Mr. Fields' breach of contract claim and his allegations regarding an implied-in-fact contract. Plaintiff has cross-moved for summary judgment. Summary judgment is designed to secure the " 'just, speedy, and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 1). Summary judgment is appropriate where there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it would affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505.

In considering a motion for summary judgment, the court does not "weigh[ ]" each side's evidence. *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed.Cir.2002). Rather, "the court views the evidence and any disputed factual issues in the light most favorable to the party opposing the motion." *Enzo Biochem, Inc. v. Gen–Probe Inc.*, 285 F.3d 1013, 1017 (Fed. Cir.2002). That is, all doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). However, the non-moving party has the burden of producing sufficient evidence that there is a genuine issue of material fact in dispute which would allow a reasonable finder of fact to rule in its favor. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Such evidence need not be admissible at trial; nevertheless, mere denials, conclusory statements or evidence that is merely colorable or not significantly probative is not sufficient to preclude summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2554; *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511; and *Mingus*, 812 F.2d at 1390–91.

In cases where both parties have moved for summary judgment, as they have in this case, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus*, 812 F.2d at 1391. In resolving cross-motions for summary judgment, the court may not weigh the evidence and determine the truth of the matter. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

#### B. Motion to Dismiss

The government seeks for this court to dismiss Mr. Fields' misrepresentation claim and his claim for punitive damages on the basis that this court lacks jurisdiction to hear these claims. RCFC 12(b)(1), which is identical to Rule 12(b)(1) of the Federal Rules of Civil Procedure, provides for dismissal of a claim for a "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1); RCFC 12(b)(1). If there is no jurisdiction, this court must dismiss the action.

This court's subject matter jurisdiction is strictly construed. *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1372–74 (Fed.Cir.1983); *Mega Constr. Co. v. United States*, 29 Fed.Cl. 396, 472 (1993). The non-moving party bears the burden of establishing jurisdiction by a preponderance of the evidence. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993); *Reynolds v. Army & Air Force Exchange Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court will generally consider the facts alleged in the complaint to be true and correct. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). If, however, jurisdictional facts are in dispute, then a court may consider relevant evidence in order to resolve the factual dispute. *Reynolds*, 846 F.2d at 747 (citing *Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct.

1009, 1010, 91 L.Ed. 1209 (1947)). Ambiguities regarding the existence of subject matter jurisdiction should be "resolved against the assumption of jurisdiction." *Mars Inc. v. Kabushiki–Kaisha Nippon Conlux,* 24 F.3d 1368, 1373 (Fed.Cir.1994) (citation omitted). Significantly, a decision to dismiss an action for a lack of jurisdiction does not carry *res judicata* effect, and therefore does not present a bar to a subsequent action on the merits in a court of competent jurisdiction. *Do–Well Machine Shop, Inc. v. United States,* 870 F.2d 637, 640 (Fed.Cir.1989); *Cubic Defense Systems, Inc. v. United States,* 45 Fed.Cl. 239, 248 (1999).

## II. Merits

### A. Alleged Breach of Contract

#### 1. Claims for tortious breach of contract

Mr. Fields seeks $181,212 in damages for breach of contract and $2 million for tortious breach of contract. The government moves for this court to dismiss for lack of subject matter jurisdiction those of Mr. Fields' claims that sound in tort.

The Tucker Act, 28 U.S.C. § 1491, provides as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort. . . .*

28 U.S.C. § 1491(a)(1) (emphasis added).

▓ It is well-established that "[t]o the extent [plaintiff] is actually asserting a claim sounding in tort, it is expressly beyond the jurisdiction of the Claims Court." If, however, a plaintiff bases his claim upon the violation of a contractual obligation, the Tucker Act may confer jurisdiction even though the claim contains tortious elements. As the United States Court of Appeals for the Federal Circuit explained:

If contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction. If an action arises primarily from a contractual undertaking, jurisdiction lies in the Claims Court regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.

*Wood v. United States,* 961 F.2d 195, 198 (Fed.Cir.1992) (internal citations and quotations omitted).

▓ Therefore, insofar as Mr. Fields' claim for tortious breach of contract sounds in tort and is independent from his cause of action for breach of contract, it is dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of this court. To the extent that Mr. Fields seeks damages for breach of contract, those claims are discussed *infra.*

#### 2. Claims for breach of contract

##### a. Termination for convenience

▓ Mr. Fields apparently bases his breach of contract claim upon the Air Force's termination of his contract for convenience and the Air Force's refusal to exercise the contract's third option year. Plaintiff argues that the Air Force terminated his contract, as it refused to perform the option agreement. He contends that this "refusal" constitutes a "willful[ ] and intentional[ ] breach" of contract. Complaint ¶ 12. He contends that "the government is obligated to honor the second option contract and it would be unconscionable to find that the government could arbitrarily decide to refuse to honor the agreement." Plaintiff's Response and Cross–Motion at 11. He also contends that "[t]here was no reasonable basis to terminate Rodney M. Fields." *Id.* at 9. Thus, it seems that Mr. Fields' position is that the contract prohibited the Air Force from terminating the contract for convenience.

The relevant facts are undisputed. As discussed, *supra,* the contract permitted the Air Force to terminate the contract for its convenience upon 15 days' written notice. Plaintiff's Appendix at 19. Specifically, the FAR provision that is incorporated into the con-

tract,[2] 48 CFR § 52.249–12 (1984) provides as follows: "The Government may terminate this contract at anytime upon at least 15 days' written notice by the Contracting Officer to the Contractor." Plaintiff admits in his complaint that the Air Force provided 28 days' written notice of termination. The Air Force's December 3, 1998 written notice of termination states in pertinent part:

You are notified that the Contract number F22600–96–D0016 (referred to as "the contract") is terminated completely for the Government's convenience under the contract clause entitled FAR 52.249–12, Termination–Personal Services (Apr. 84). The termination is effective 31 Dec 98.

Defendant's Appendix at 72.

Mr. Fields acknowledged receipt of this notice on December 7, 1998. Thus, the Air Force properly terminated Mr. Fields' contract pursuant to the plain terms of the contract by giving Mr. Fields twenty-eight days of notice of the government's decision to terminate. Further, it is well-settled that a termination for convenience does not breach the contract. The Court of Claims has held: "If the Government has reserved the right to terminate a contract for its convenience and then does so, there is no breach ...." *G.L. Christian and Assocs. v. United States*, 160 Ct.Cl. 1, 312 F.2d 418, 423 (1963), *cert. denied*, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). *See also Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581–82 (Fed.Cir.1995). Therefore, the termination of Mr. Fields' contract for convenience, without more, cannot sustain a claim for breach of contract.

■ The law recognizes only one narrow exception to this rule. That is, the termination of a contract for convenience is valid only "in the absence of bad faith or a clear abuse of discretion." *National Factors, Inc. v. United States*, 204 Ct.Cl. 98, 492 F.2d 1383, 1385 (1974). Significantly, there is a general presumption that government officials perform their duties in good faith.

*Sanders v. United States Postal Service*, 801 F.2d 1328, 1331 (Fed.Cir.1986); *Spezzaferro v. Federal Aviation Administration*, 807 F.2d 169, 173 (Fed.Cir.1986). Government officials are presumed to act conscientiously and in good faith in the discharge of their duties. *Asco–Falcon II Shipping Co., et al. v. United States*, 32 Fed.Cl. 595, 604 (1994). Thus, "in order for this court to find that defendant breached its *duty* of good faith, plaintiff[ ] must *allege and prove*, by clear and strong evidence specific acts of bad faith on the part of the government." *Id.* (citation omitted) (emphasis in original). Indeed, it requires "well nigh irrefragable proof" to establish that the government acted in bad faith. *Kalvar Corp. v. United States*, 543 F.2d 1298, 1301, 211 Ct.Cl. 192 (1976). Furthermore, a "bland allegation of disparate treatment does not, *ipso facto*, state an actionable claim. Plaintiff must show a breach of a *contractual* obligation." *Asco–Falcon II*, 32 Fed.Cl. at 604 (emphasis in original). *See also The Libertatia Associates, Inc. v. United States*, 46 Fed.Cl. 702, n. 9 (2000). This being so, the plaintiff in this action has failed to allege sufficient evidence of bad faith to survive the government's motion for summary judgment.

■ Plaintiff argues that it was unconscionable (bad faith) for the Air Force to exercise its option and then to subsequently rely on the termination for convenience provision of the contract. Mr. Fields contends that a termination for convenience is improper where the government enters into a contract with no intention of fulfilling its promises. In his brief, Mr. Fields contends that "[t]he contracting officer gave notice of intent to exercise the option contract in July 1998 and subsequently exercised the second option contract on October 5, 1998 with no intention of fulfilling its promises." Plaintiff's Response and Cross–Motion at 13. Significantly, however, these dates do nothing to establish bad faith as documents attached in the appendices establish that it was determined in early September, 1998 that under the new

---

**2.** Plaintiff apparently overlooks the fact that the termination for convenience clause is incorporated into the contract, as he alleges "[t]he contract did not provide a termination clause and did not provide on its face that the contractor would be given fifteen (15) days notice for convenience. The government is obliged, like all contracting parties, to deal in good faith with contractors." Plaintiff's Response and Cross–Motion at 8.

budgeting system, no funds were allocated to care for beneficiaries outside the Keesler catchment area, and that the action of discontinuing screening Pap smears that originated at non-Region IV facilities was necessary to preserve Keesler's financial integrity. Keesler intended to acquire additional military cytotechnologists who would perform the reference work, such as that performed by Mr. Fields under the contract. *See* Plaintiff's Appendix at 41; Defendant's Appendix at 42–45.

As to bad faith, Mr. Fields specifically testified in his deposition that none existed. The relevant excerpt of the deposition transcript reads as follows:

Q: Do you have any reason to think that anyone from Keesler was acting in bad faith to you?

A: No.

Defendant's Appendix at 60.

Mr. Fields, did, however, subsequently attempt to bolster his claim of bad faith in his affidavit submitted in support of plaintiff's response to defendant's motion to dismiss and motion for summary judgment and plaintiff's cross-motion for summary judgment. In this affidavit, Mr. Fields states:

In 1996, I placed a bid to the Department of Air Force for the entire four years of cytotechnology services. It was inferred to me that it would be a four year contract not a one year contract. The Department of the Air Force throughout my employment advised me and implied that the contract would be a four (4) year contract. I feel that the Government acted in bad faith in not honoring the contract and failing to give me proper notice. I did not receive any written notice that my contract was being terminated prior to receiving this exercise of option. The only notice I received regarding my contract being terminated was in December 1998 after the option contract had been exercised by the Department of the Air Force.

Affidavit of Rodney M. Fields at 1 (Attachment to Plaintiff's Response and Cross–Motion).

The Federal Circuit in *Sinskey v. Pharmacia Ophthalmics, Inc.,* 982 F.2d 494 (Fed.Cir. 1992) expressly disavowed such attempts to create an issue of fact. The Court stated:

A party cannot create an issue of fact by supplying an affidavit contradicting his prior deposition testimony, without explaining the contradiction or attempting to resolve the disparity. . . . Where, as here, a party has been examined extensively at deposition and then seeks to create an issue of fact through a later, inconsistent declaration, he has the duty to provide a satisfactory explanation for the discrepancy at the time the declaration is filed. To allow him to preclude summary judgment simply by contradicting his own prior statements would seriously impair the utility of Federal Rule of Civil Procedure 56.

*Id.* at 498.

In this matter, Mr. Fields has presented no such explanation to resolve the discrepancy between his affidavit and his earlier deposition testimony. And even if this court were to consider plaintiff's affidavit, the bland allegations of bad faith presented therein are wholly insufficient to establish bad faith. For the most part, the affidavit tracks the prior deposition testimony, except for the fact that plaintiff specifically attempts to invoke the term "bad faith" in his subsequent affidavit. Also, plaintiff's allegations of bad faith are opaque at best and use the terms "inferred" and "implied" when referring to the Air Force's role in advising or informing him about his contract.

In addition, Mr. Fields cannot contend that the Air Force abused its discretion in terminating his contract. The Air Force terminated Mr. Fields' contract because it needed to reduce costs. Despite plaintiff's protestations to the contrary, this justification is firmly supported in the exhibits to the pending motions. *See* Defendant's Appendix at 42–45; Plaintiff's Appendix at 41.

Accordingly, the defendant's decision to terminate the contract for convenience is entirely consistent with the terms of the contract and does not constitute a breach thereof. Plaintiff is not entitled to recover for the government's decision to terminate the contract for convenience, as his claim has no basis in fact or law.

### b. Claim of failure to exercise options

■ Mr. Fields also contends that the government's failure to exercise all of the contract's option years constitutes a breach. Significantly, however, the contract did not obligate the Air Force to exercise all of the option years. Ironically, Mr. Fields even testified at his deposition that he understood that the exercise of the contract options rested solely within the Air Force's discretion. He testified:

Q: Okay. But you understood that this contract that we're referring to here, Exhibit RF–1, that's an option contract, correct?

A: Right. I understand that.

Q: And you had understood the government may or may not have decided to exercise the option, right?

A: Right.

Q: And that's their right, correct?

A: That's their right.

Defendant's Appendix at 54.

Mr. Fields' understanding is consistent with the plain language of the contract. The contract provides that its options "may be exercised by the *unilateral* right of the Government." *Id.* at 14 (emphasis added). Thus, the exercise of the contract's options rested within the sole discretion of the Air Force, and its decision not to exercise those options does not breach the contract. The proposition that an option is " 'the obligation by which one binds himself to sell and leaves it discretionary with the other party to buy' " finds support in the case law. *See Dynamics Corp. of America v. United States*, 182 Ct.Cl. 62, 389 F.2d 424, 431 (1968) (quoting 1 Williston, Contracts § 61A at 199 (3d ed.1957)) (emphasis added; ellipsis and further citation omitted). *See also Government Systems Advisors, Inc. v. United States*, 847 F.2d 811, 813 (Fed.Cir.1988) (recognizing "the government's freedom to decline the exercise of its option"). Thus, because the decision to buy rests within the buyers' discretion, the existence of an option does not require the buyer to exercise that option.

In summary, neither the convenience termination nor the refusal to exercise the contract options constitute a contractual breach. Because the Air Force did not breach the contract, the government is entitled to summary judgment on plaintiff's claim for breach of contract.

### 3. Alleged breach of an implied-in-fact contract

■ Plaintiff contends that an implied-in-fact contract for a four year period existed between him and the Air Force and that the government is liable for damages stemming from the breach of this alleged contract. It is, however, unnecessary for this court to examine this claim in detail because there exists an express, written contract that covers the same subject as Mr. Fields' alleged implied contract, i.e., Mr. Fields' provision of cytology services to Keesler. The existence of a written contract regarding this subject matter precludes the finding of an implied-in-fact contract regarding this subject. An implied-in-fact agreement must be " 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.' " *Trauma Service Group v. United States*, 104 F.3d 1321, 1326 (Fed.Cir.1997) (quoting *Hercules Inc. v. United States*, 516 U.S. 417, 116 S.Ct. 981, 986, 134 L.Ed.2d 47 (1996)) (further citation omitted). *See also Atlas Corp. v. United States*, 895 F.2d 745, 754–55 (Fed. Cir.1990).

Thus, Mr. Fields cannot maintain his allegation of an implied-in-fact contract, and the government is entitled to summary judgment upon his claim of breach of an implied-in-fact contract.

### B. Claim for Fraudulent and Negligent Misrepresentation

■ Count II of Mr. Fields' complaint seeks damages for misrepresentation. Apparently, this count alleges that the government misrepresented to Mr. Fields that it would exercise all of the option years in his contract. As discussed *supra* in conjunction with Mr. Fields' claim for tortious breach of contract, this court lacks jurisdiction over

claims sounding in tort. 28 U.S.C. § 1491(a)(1). It is well established that misrepresentation sounds in tort. *United States v. Neustadt,* 366 U.S. 696, 706, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); *Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 508 F.2d 817, 821 (1974) (stating that *Neustadt* "removes any doubt that claims based upon negligent misrepresentation … are claims sounding in tort"). Because this court lacks jurisdiction to hear claims based upon misrepresentation, plaintiff's claim for misrepresentation is dismissed pursuant to Rule 12(b)(1) of this court for lack of subject matter jurisdiction.

### C. Damages

#### 1. Alleged damages stemming from the termination

Plaintiff in this matter seeks damages stemming from the contract's termination. Because this court has found that none of plaintiff's claims survive the government's motion to dismiss for lack of subject matter jurisdiction and for summary judgment it is unnecessary for this court to address the issue of damages, because plainly Mr. Fields is entitled to none.

#### 2. Punitive damages

 It also bears noting that Mr. Fields' complaint seeks $5 million in punitive damages. However, this court does not possess jurisdiction to entertain a claim against the United States for punitive damages. *Christos v. United States,* 48 Fed.Cl. 469, 478, n. 22 (2000); *Cooper v. United States,* 47 Fed. Cl. 115, 117 (2000).

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) The defendant's motion to dismiss and motion for summary judgment filed June 2, 2000 is **GRANTED.** Specifically:

   (a) Insofar as plaintiff's claim for tortious breach of contract sounds in tort and is independent from his cause of action for breach of contract, it is dismissed for lack of sub-

ject matter jurisdiction pursuant to Rule 12(b)(1) of this court;

   (b) The defendant is entitled to summary judgment on plaintiff's claim for recovery based on the government's alleged breach of contract and alleged breach of implied-in-fact contract;

   (c) Plaintiff's claim for misrepresentation is dismissed pursuant to Rule 12(b)(1) of this court for lack of an subject matter jurisdiction;

   (d) Plaintiff is entitled to no damages; and

   (e) Plaintiff's claim for punitive damages is dismissed pursuant to Rule 12(b)(1) of this court.

(2) Plaintiff's cross-motion for summary judgment filed June 22, 2000 is **DENIED;**

(3) The Clerk is directed to enter final judgment dismissing the complaint in this action; and

(4) Each party to bear its own costs.