**MAGIC BRITE JANITORIAL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 05–1380C.**

United States Court of Federal Claims.

Jan. 19, 2006.

Kevin M. Cox, Law Firm of Joseph A. Camardo, Jr., Auburn, New York, for plaintiff.

Kelly B. Blank, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Deborah A. Bynum, Assistant Director, all of Washington, D.C., for defendant.

### *MEMORANDUM OPINION*

WOLSKI, Judge.

This matter involves a post-award bid protest filed by Magic Brite Janitorial, regarding the procurement of janitorial services for certain federal buildings in Little Rock, Arkansas. Magic Brite challenges the decision of the federal government, specifically the General Services Administration ("GSA") and the Committee for Purchase From People Who Are Blind or Severely Disabled ("the Committee"), not to exercise an option under a contract to perform these services. Magic Brite has moved for a preliminary injunction to prevent the contract from being performed by another entity. It argues that the Government was required to assess the economic impact on the incumbent before deciding not to exercise the option to extend the contract for another year. The Court heard oral arguments on this motion on December 30, 2005, and denied it for reasons stated on the record. This memorandum provides a written explanation of that decision.

### I. BACKGROUND

The Javits–Wagner–O'Day Act ("JWOD"), codified at 41 U.S.C. §§ 46–48c, established the Committee for Purchase from People

Who Are Blind or Severely Disabled. In 1991, pursuant to its statutory mandate, the Committee placed the janitorial contract at issue in this case on the JWOD procurement list. *See* 56 Fed.Reg. 63936 (Dec. 6, 1991).

On December 1, 2004, Pathfinder, Inc.—which was at that time the incumbent nonprofit agency qualified by the National Industries for the Severely Handicapped ("NISH") to perform the Little Rock contract—informed the GSA that it could no longer perform the contract at the requested price. *See* Def.'s App. at 4 (letter from Pathfinder to GSA). In its letter, Pathfinder asked NISH and the Committee to issue a one-year purchase exception for the contract, which would open it to commercial bidding. *See* 41 C.F.R. § 51–5.4 (authorizing the nonprofit agency to issue a purchase exception if the nonprofit agency cannot furnish the service within the specified period and the service is available commercially); 48 C.F.R. § 8.706(a) (authorizing the purchase from commercial sources if authorized by a purchase exception). On December 2, 2004, NISH issued a purchase exception for the contract for a one year period from January 1, 2005, through December 31, 2005. Def.'s App. at 5. Magic Brite was awarded the contract for a one-year period, with four one year options, on December 7, 2004. Complaint ¶ 7; *see also* Def.'s App. at 6; Ex. 1 to Gomez Aff.[1]

On July 8, 2005, GSA contacted Pathfinder to invite it to perform the contract after the expiration of the exception period. Def.'s App. at 7. On July 27, 2005, Pathfinder accepted. *Id.* at 8. Subsequently, in a letter dated October 4, 2005, GSA notified Magic Brite that it would not exercise its option to extend the contract beyond the base year. *Id.* at 9. Magic Brite wrote to the GSA contracting officer on November 4, 2005 asking for reconsideration, *id.* at 10, but on December 6, 2006, the contract was officially awarded to Pathfinder. *Id.* at 12. Magic Brite wrote the GSA to request reconsideration again on December 15, 2005, *id.* at 13–14, and then filed a complaint in this Court

on December 29, 2005. Because Pathfinder was to assume the contract on January 1, 2006, the Court promptly held a status conference via telephone on December 29, 2005, and a hearing, again via telephone, on Magic Brite's motion for a preliminary injunction, on December 30, 2005.

In its motion for a preliminary injunction ("Pl.'s Mot."), Magic Brite argued that the Government's decision not to exercise the contract's first option year violated regulations requiring the Committee to analyze the impact that such action would have on the current contractor. Pl.'s Mot. at 4. The Government filed a brief opposing the motion on the morning of the hearing. After considering the written and oral argument of counsel for the parties, the Court denied Magic Brite's motion.

## II. DISCUSSION

■ In determining whether to grant a motion for a preliminary injunction, the Court considers four factors. Under this standard, the plaintiff must carry the burden of establishing the right to the extraordinary remedy requested, in light of the following factors: 1) that it will suffer irreparable injury if the contract award is not enjoined; 2) a reasonable likelihood of success on the merits of its claim; 3) that the harm suffered by it, if the contract award is not enjoined, will outweigh the harm to the Government and third parties; and 4) that granting injunctive relief serves the public interest. *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir. 1993); *Chrysler Motors Corp. v. Auto Body Panels, Inc.,* 908 F.2d 951, 953 (Fed.Cir. 1990); *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir.1983); *see also University Research Co., LLC v. United States,* 65 Fed.Cl. 500, 504 (2005). None of the four factors, standing alone, is dispositive; thus, "the weakness of the showing regarding one factor may be overborne by the strength of the others." *Chrysler Motors,* 908 F.2d at 953; *FMC Corp.,* 3 F.3d at 427. Conversely, the lack of an "adequate showing with regard to any one factor may

1. The GSA had previously issued a Solicitation for bids to perform the contract on October 15, 2004. *See* Ex. 1 to Gomez Aff.

be sufficient, given the weight or lack of it assigned the other factors," to deny the injunction. *Chrysler Motors,* 908 F.2d at 953. It appears clear, however, that in a certain sense minimally satisfying the first two factors is necessary—if a party either will suffer no amount of irreparable harm or has no chance of succeeding on the merits, an injunction will rarely, if ever, issue. *See FMC Corp.,* 3 F.3d at 427.

■ Under the circumstances of this case, it stands to reason that some irreparable injury will be suffered by Magic Brite in the absence of an injunction. Unlike the typical bid protest, in which there is some uncertainty as to whether a protester would have received a contract had the legal infirmities complained of not existed, this case concerns the exercise of an option year. If Magic Brite is correct, then the option could not have been declined in the manner it was, and Magic Brite would have continued performing the contract on January 1, 2006. If the contract award is not enjoined, but Magic Brite ultimately succeeds on the merits, a subsequent order to terminate the Pathfinder contract and exercise the Magic Brite option will not compensate Magic Brite for the delay in earning its stream of profits under the contract. The government concedes that this economic injury may not be remedied through a damages award; hence, the injury is by definition irreparable.

Magic Brite's motion runs into difficulty, however, under the second factor. Its legal theory is flawed, and thus it failed to demonstrate any likelihood of success on the merits, at least at this initial stage of proceedings.[2] Magic Brite relies on the "severe adverse impact" language of 41 C.F.R. § 51–2.4(a)(4), which imposes on the Committee a requirement to consider the "[l]evel of impact on the current contractor for the commodity or service." It argues that this regulation requires the Government to first determine there would be no severe economic impact on its operations as the incumbent contractor before the Government could decide not to exercise the option year. Pl.'s Mot. at 4–5. But this regulation applies only to the determination that a contract be placed on the JWOD procurement list. *See* 41 C.F.R. § 51–2.4(a) (stating the listed criteria are "[f]or a commodity or service to be suitable for addition to the Procurement List"). The decision to add the contract at issue to the JWOD procurement list was made over fourteen years ago, and is not the subject of this action. *See* 56 Fed.Reg. 63936 (Dec. 6, 1991).

Magic Brite received the contract at issue under a purchase exception, pursuant to 41 C.F.R. § 51–5.4 and 48 C.F.R. § 8.706. *See* Def.'s App. at 5–6. The granting of an exception does not have the effect of removing the contract from the JWOD procurement list—such a "deletion" is accomplished under an entirely different regulation, 41 C.F.R. § 51–6.8. Moreover, the removal of a contract from the JWOD procurement list requires the same notice and comment rulemaking procedures as are followed in adding contracts to the list. *See* 41 U.S.C. § 47(a)(2) (requiring the Committee to follow 5 U.S.C. § 553(b)-(e) to make additions or subtractions to the JWOD procurement list); *see also* 41 C.F.R. § 51–2.8(d) (additions to and deletions from the list are published in the Federal Register). Nothing of the sort was alleged to have been followed in the granting of the exception. Since the contract was not removed from the procurement list, the procedures for adding a contract to the list are irrelevant.

Magic Brite has not identified any statutory or regulatory requirement that would force the Committee, the GSA, or any other part of the Government to consider the impact on Magic Brite of a decision to return the contract to a NISH-approved agency. Nor does the Solicitation promise any such procedure—to the contrary, it stresses that the Government's option is "unilateral" and adds: "The exercise of options is a Government prerogative, not a contractual right on the part of the Contractor." Ex. 1 to Gomez Aff., § F.3.[3] And in any event, because the

---

2. As the hearing on the motion was held the day after the complaint was filed, the Court was proceeding without the benefit of an administrative record.

3. The absence of any such fetters is underscored by the cancellation clause, which provides: "Either party may cancel this contract with 30 days

**322**

contract was still on the JWOD procurement list and the exception had expired, it appears that the Committee and GSA were required by JWOD to award the contract to a NISH-approved agency if any such agency were willing to accept the contact at the specified price. *See* 41 U.S.C. § 48; *see also* 41 C.F.R. §§ 51–1.2, 51–5.4; 48 C.F.R. § 8.706. Thus, plaintiff seems to have things backwards—the default position was not that the option be exercised, but that a NISH-approved agency be utilized.

Plaintiff's inability to demonstrate any likelihood of success on the merits warrants the denial of its motion for a preliminary injunction. The Court doubts that there could ever be any showing on the other three factors that is strong enough to compensate for the failure to satisfy the likelihood of success factor, and here it is not even a close question. *Cf. FMC Corp.,* 3 F.3d at 427 (suggesting "extraordinary injury or strong public interest" is needed when movant is *unlikely* to succeed). The irreparable injury is but the interest on a few months' foregone profits. The balance of hardships hardly tilts in *Magic Brite's* favor, when plaintiff waited twelve weeks after being notified that the option was not being exercised before filing a lawsuit in this Court. Moreover, by filing the complaint and motion for injunctive relief twenty-three days after the contract was offi-

cially awarded to Pathfinder, and with just two days remaining under the base term of its own contract, Magic Brite allowed hardship to accumulate on the opposing side, in the form of transition costs incurred by Pathfinder. And Magic Brite's argument concerning the public interest factor—that "exact conformance with the bidding procedures as promulgated in federal statutes and procurement regulations will best serve the public interest," Pl.'s Mot. at 6—is based on its erroneous interpretation of the regulations, already discussed and rejected by the Court. Having pressed a legal argument that cannot succeed, and with no other factors compellingly in its favor, plaintiff has failed to make the requisite showing to support the issuance of a preliminary injunction.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIED** plaintiff's motion for a preliminary injunction on December 30, 2005.

---

written notice to the other party at no cost to either party." Ex. 1 to Gomez Aff., § H.6.