MAGIC BRITE JANITORIAL, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–1380C.

United States Court of Federal Claims.

Filed under seal Sept. 8, 2006.

Reissued Sept. 25, 2006.[1]

Kevin M. Cox, Law Firm of Joseph A. Camardo, Jr., Auburn, New York, for plaintiff.

Arlene Pianko Groner, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Deborah A. Bynum, Assistant Director, all of Washington, D.C., for defendant.

---

1. The Court has reviewed and incorporated the redactions proposed by the defendant. The opinion is released for publication with some minor, non-substantive corrections, and with redacted information replaced in the following manner: "[XXXX]."

*MEMORANDUM OPINION AND ORDER*

WOLSKI, Judge.

In this case a contract which, by law, can only be performed by a nonprofit agency unless a purchase exception is granted, was awarded to such a nonprofit agency. The incumbent for-profit contractor initially protested the award, before seeing the administrative record, on the basis that allegedly-applicable regulations were violated. *See* Compl. ¶¶ 15–17. The Court denied the contractor's motion for a preliminary injunction, finding that the cited regulations did not apply to the decision being challenged. *Magic Brite Janitorial v. United States,* 69 Fed.Cl. 319, 321–22 (2006). After the administrative record had been filed, the contractor moved for judgment on the administrative record, arguing that the facts demonstrate that the government should have been required, under a clause in the solicitation, to exercise an option to extend the incumbent's contract. The government moves to dismiss, arguing that the contractor lacks standing, and cross-moves for judgment on the administrative record. For the reasons that follow, the government's motion for judgment is GRANTED.

## I. BACKGROUND

The Committee for Purchase from People Who Are Blind or Severely Disabled ("Committee"), pursuant to its authority under the Javits–Wagner–O'Day Act ("JWOD"), 41 U.S.C. § 46–48c, identified the General Services Administration ("GSA") janitorial contract at issue in this case as being eligible for performance by a nonprofit agency certified by the National Industries for the Severely Handicapped ("NISH"). *See* 56 Fed.Reg. 63936 (Dec. 6, 1991) (placing the present contract on the JWOD procurement list). The contract was ultimately awarded to Pathfinder, Inc., a NISH-approved nonprofit agency.

On December 1, 2004, Pathfinder notified the GSA that it would not be able to perform its duties under the contract for the following year at the price requested by GSA. AR at 542.[2] Pathfinder suggested that the Committee and NISH issue a purchase exception for the contract. *Id.; see also* 41 C.F.R. § 51–5.4(a), (c) (authorizing NISH and the Committee to grant purchase exceptions allowing for commercial procurement when the nonprofit agency cannot provide the required service). On December 2, 2004, NISH issued the purchase exception for a one-year period, from January 1, 2005 through December 21, 2005. AR at 544. A few days later, on December 7, 2004, GSA awarded the contract to Magic Brite. *Id.* at 591. The contract included a base period of one year, with four options to extend the contract for successive one-year periods. *Id.* at 596; *see also id.* at 260 (Solicitation No. GS–07P–04–UTC–0014 ("Solicitation") § F.3).

On July 8, 2005, GSA invited Pathfinder to resume performance upon the conclusion of Magic Brite's one-year contract. AR at 653. Pathfinder accepted GSA's invitation, *id.* at 655, and was awarded the contract. *Id.* at 691. On December 29, 2005, Magic Brite filed a post-award bid protest action in this Court, arguing that GSA's decision not to exercise its option to renew the contract violated regulations requiring the Committee to analyze the impact that the non-renewal would have on the incumbent contractor. *Magic Brite,* 69 Fed.Cl. at 320. The Court rejected this argument. *Id.* at 321–22. Magic Brite subsequently moved for judgment on the administrative record, arguing that GSA violated the terms of its Solicitation by awarding the contract to Pathfinder at a price greater than six percent above the price at which Magic Brite would have performed. Pl.'s Mot. at 5.

The government responded with a motion to dismiss the case, arguing that Magic Brite lacks standing for two reasons: it was not eligible to be awarded the contract in the absence of a purchase exception; and, even under a purchase exception, Magic Brite no longer qualified for award under the Small Business Administration ("SBA") section 8(a) program.[3] Def.'s Mot. at 3–5. The government also cross-moved for judgment on the

---

**2.** "AR" refers to the administrative record that was filed with the Court on January 11, 2006.

**3.** *See* 15 U.S.C. § 637 (2000).

administrative record, arguing that GSA acted within its discretion and that the terms of the Solicitation were not violated. Def.'s Mot. at 5–8.

## II. DISCUSSION

### A. The Option to Renew

■■■ As a general matter, the holder of an option has discretion to exercise the option or not. *Cont'l Collection & Disposal, Inc. v. United States,* 29 Fed.Cl. 644, 650 (1993); 1 FARNSWORTH ON CONTRACTS § 3.23 ("Like any other offer, an option imposes no duty on the offeree. The offeree has unfettered discretion to either accept the offer or not."). An option contract binds the giver of the option, not the holder of the option. *See Gov't Sys. Advisors, Inc. v. United States,* 847 F.2d 811, 813 (Fed.Cir.1988) ("An option is normally an option, and nothing ... limited the circumstances under which the government could decline to exercise that bargained-for right in this case."). The decision whether or not to purchase a service under an option resides with the option holder; the mere existence of an option does not require the holder to exercise it. *See Fields v. United States,* 53 Fed.Cl. 412, 419 (2002). When the government holds an option it may employ whatever lawful criteria it chooses when deciding whether to exercise it or not. *Mktg. and Mgmt. Info., Inc. v. United States,* 62 Fed.Cl. 126, 130 (2004) ("[W]here a contract is renewable solely at the option of the government, the government is under no obligation to exercise the option."). But one supposes that the government, in obtaining an option, *could* cabin its discretion and make the exercise of an option less optional, via statute, regulation, or the terms of a contract.

Magic Brite argues that something of this sort was accomplished by language in the relevant solicitation, although the provisions concerning the option stressed the government's discretion. The solicitation informed bidders that the government retained "the unilateral option of extending the term of this contract for 4 consecutive additional periods of 12 months each," and emphasized that "[t]he exercise of options is a Government prerogative, not a contractual right on the part of the Contractor." AR at 260 (Solicitation § F.3). This language describing the nature of the option clearly put Magic Brite on notice that GSA may choose not to exercise it. *See Hi–Shear Tech. Corp. v. United States,* 55 Fed.Cl. 418, 423 (2003), *aff'd* 356 F.3d 1372 (Fed.Cir.2004).

Magic Brite contends that the government's discretion was nevertheless limited by the terms of Section M of the Solicitation, which reads, in relevant portion:

> The NISH workshop will be given an opportunity to perform the services at up to 6% above the otherwise successful commercial offeror's price. If the NISH workshop declines to perform at that price, an exception to the government's mandatory use of the Procurement List will be granted and award will be made to the commercial offeror.

AR at 351; *see also id.* at 797 (§ M of Pathfinder's contract).[4] Following this clause, the government awarded the contract to Magic Brite when Pathfinder declined "the opportunity to perform the services ... at up to 6% above MBJ's price." *See* AR at 534 (Nov. 18, 2004 GSA ltr. offering contract to Pathfinder); *see also id.* at 542 (Dec. 1, 2004 Pathfinder ltr. informing GSA it "cannot meet the price reduction demand"). Magic Brite interprets this clause to *mandate* the exercise of the option, in the occasion that a nonprofit agency cannot provide the services at 106% or less of Magic Brite's price—since the provision states a purchase exception "*will* be granted and an award *will* be made...." AR at 351 (emphasis added).

The Court does not read this provision as necessarily requiring the exercise of an option. The "otherwise successful commercial offeror's price" is not, by its terms, limited to an incumbent's option price, and certainly could result from a new process of competitive bidding. But the record shows that in this case, when GSA contacted Pathfinder to offer it the contract for this year, the Magic Brite option price plus six percent was the

---

4. Section M of the Solicitation uses the sample language contained in the GSA/JWOD Strategic Alliance Standard Operating Procedure manual. *See* AR at 201.

basis for the offer. *See id.* at 653. Thus, Magic Brite's contention that the contract was awarded to Pathfinder at a price greater than six percent above its own seems to state a valid ground for objecting to the award. Before considering the merits of this claim, the Court will address the government's motion to dismiss for lack of standing.

## B. Standing

■ The government contends that Magic Brite does not have standing to challenge the award to Pathfinder, arguing that the contractor cannot show that it had a substantial chance of being awarded the contract but for the alleged error. Def.'s Mot. at 4–5. According to the government, since no purchase exception had been granted for this year, performance of the contract would be limited to NISH-approved nonprofit agencies, as the contract is on the JWOD procurement list. But this argument overlooks the fact that the error in question concerned the very determination whether a purchase exception would be granted. The record clearly shows that Magic Brite was considered by the government to be "the otherwise successful commercial offeror[ ]," AR at 351, for purposes of Section M of the Solicitation—as Magic Brite's price was the basis of the offer to Pathfinder. *See id.* at 653. If the government erred in finding that the nonprofit agency accepted the contract at 106% of Magic Brite's price, then Magic Brite certainly would have had a substantial chance of retaining the contract.

■ The second argument as to standing is that the award to Magic Brite was under the SBA section 8(a) set-aside program, for which Magic Brite is no longer eligible. Def.'s Mot. at 3–5; see AR at 904–05. While this may eliminate any interest of Magic Brite in a future competition for this contract, the protest at hand alleges an arbitrary and erroneous decision to avert the potential exercise of an option under an existing contract. The Court is not aware of any laws or regulations that would prevent the exercise of an option under a contract awarded under

section 8(a), when the contractor ceases to be eligible for the program. See *AVW Electronic Systems, Inc.*, 1993 WL 181331 (Comp.Gen.). The Court holds that Magic Brite does have standing to challenge the GSA's determination that Pathfinder, the NISH-approved nonprofit agency, accepted the offer to perform the relevant services "at up to 6% above" the Magic Brite price.

## C. Was the Government's Decision Arbitrary?

■ Post-award bid protests are heard by this Court under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub.L. No. 104–320, §§ 12(a)-(b), 110 Stat. 3870, 3874–75 (1996). 28 U.S.C. § 1491(b)(1) (2000). This provision requires our Court to follow Administrative Procedure Act ("APA") standards of review. 28 U.S.C. § 1491(b)(4). Procurement awards are informal agency decisions, which are reviewed under the standard of 5 U.S.C. § 706(2)(A): whether the agency's acts were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).[5]

The record shows the following: If GSA exercised its option, Magic Brite would have been required to perform for $542,820.00. AR at 653. Six percent of this amount is $32,569.20. GSA offered the contract to Pathfinder for $575,389.20, the option year price plus six percent. *Id.* Pathfinder accepted at this price. *Id.* at 655. Section M was satisfied once Pathfinder accepted performance at no greater than six percent above Magic Brite's option price.

Magic Brite argues that the contract was awarded at a greater than 6% premium because Pathfinder applied for, and was given, an equitable adjustment in the amount of $[XXXX.XX], prior to the award of the contract. Pl.'s Mot. at 4–7. The record shows that Pathfinder did seek an equitable adjustment, AR at 666–67, and that GSA granted the adjustment and increased the contract

---

5. The Supreme Court's decision to disregard the other APA standards in these contexts—in particular, the trial of facts de novo—was based on an apparent misreading of the legislative history. *See Gulf Group, Inc. v. United States,* 61 Fed.Cl. 338, 350 n. 25 (2004).

award to $[XXX,XXX.XX]. *Id.* at 696. But GSA's grant of an equitable adjustment to Pathfinder was not a random decision on its part; it was done pursuant to the Solicitation. *Id.* at 300 (incorporating 48 CFR § 52.222–43, allowing price adjustments based on Department of Labor wage determinations).

Had GSA obtained another purchase exception and exercised its option to extend Magic Brite's contract, Magic Brite would have been entitled to a wage determination adjustment. If Magic Brite had already applied for the equitable adjustment at the time the contract was offered to Pathfinder, then perhaps this adjustment should have been included as part of the baseline "otherwise successful commercial offeror's price," and Pathfinder's adjustment would have been limited to 106% of Magic Brite's. But the record does not contain any application for the wage determination adjustment on the part of Magic Brite.

Magic Brite attempts to belatedly remedy this situation by moving to supplement the record with an affidavit from Mr. Robert Gomez, president of Magic Brite. Pl.'s Reply at 4. Magic Brite admits that it would have been eligible for the equitable adjustment if GSA exercised the option, but argues that the adjustment would have been less than Pathfinder's because Magic Brite would allegedly perform the contract duties using fewer labor hours than Pathfinder. *Id.* Magic Brite then faults the government for providing Pathfinder with an equitable adjustment that exceeded its own by $[XXX.XX]— and exceeded 106% of its own adjustment by $[XXX.XX].[6]

A court may supplement an administrative record if additional information is necessary to help explain an agency's decision and thereby facilitate meaningful judicial review of the agency decision, or if the information is such that "by its very nature [it] would not be found in an agency record—such as evidence of bad faith. . . ." *Orion Int'l Tech. v. United States,* 60 Fed.Cl. 338, 343 (2004).

Neither of these exceptions applies to this case. The government did not have before it the potential wage determination adjustment for Magic Brite, and did not act arbitrarily (or in bad faith) by not including this unknown number in the offer to Pathfinder. Nothing in the Solicitation requires that this adjustment be estimated before an offer is made to the NISH-approved nonprofit agency. The offer was made at 106% of the Magic Brite option year price, and Pathfinder's acceptance was not conditioned upon the approval of the wage determination adjustment for which it applied. *See* AR at 655. The decision to award the contract to Pathfinder, thus, was not arbitrary or unlawful.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiff's motion for judgment on the administrative record and **GRANTS** defendant's motion for judgment on the administrative record. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

---

6. Magic Brite claims that it would only require an equitable adjustment of $[X,XXX.XX], whereas Pathfinder requested an equitable adjustment of $[X,XXX.XX]. Pl's Resp. to Def.'s Prop. Facts at ¶ 16 nn. 1–2. Increasing the estimated Magic Brite adjustment by six percent results in a total of $[X,XXX.XX].