**Slip Op. 06-20**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

MITTAL CANADA INC.,

                Plaintiff,

        v.

UNITED STATES,

                Defendant,

        and

GERDAU AMERISTEEL CORP., and
KEYSTONE CONSOLIDATED
INDUSTRIES, INC.,

                Defendant-
                Intervenors.

Before:  Richard W. Goldberg,
         Senior Judge

Court No. 05-00689

**OPINION**

[Defendant's motion to dismiss is denied, and plaintiff's motion
for preliminary injunction is denied.]

Date: February 10, 2006

Cameron & Hornbostel, LLP (Dennis James, Jr.) for Plaintiff
Mittal Canada, Inc.

Peter D. Keisler, Assistant Attorney General; David D. Cohen,
Director, Jeanne E. Davidson, Deputy Director; Commercial
Litigation Branch, Civil Division, U.S. Department of Justice,
(Michael D. Panzera), for Defendant United States.

Collier, Shannon, Scott, PLLC (Mary T. Staley, Paul C.
Rosenthal, and Robin H. Gilbert) for Defendant-Intervenors
Gerdau Ameristeel Corp. and Keystone Consolidated Industries,
Inc.

**GOLDBERG, Senior Judge**:  Before the Court is the motion of Plaintiff Mittal Canada, Inc. ("**Plaintiff**") for a preliminary injunction under USCIT R. 65(a) to prevent U.S. Customs and Border Protection ("**Customs**") from liquidating Plaintiff's entries of steel wire rod entered from October 1, 2004 through September 30, 2005 ("**the Entries**").  On December 30, 2005, the Court granted a temporary restraining order ("**TRO**") to enjoin the liquidations pending the disposition of the preliminary injunction motion.  Underlying the preliminary injunction request is Plaintiff's claim that the U.S. Department of Commerce ("**Commerce**") issued liquidation instructions that were at odds with the final results of a changed circumstances review initiated by Plaintiff.

Since entry of the TRO, substantial briefing has occurred. Customs has responded to Plaintiff's motion for a preliminary injunction and filed its own motion to dismiss.  Plaintiff has filed a motion in reply to Customs' response, and in response to Customs' motion to dismiss.  Customs filed a reply to Plaintiff's response to its motion to dismiss.  Lastly, Gerdau Ameristeel Corp. and Keystone Consolidated Industries, Inc. (collectively, "**Defendant-Intervenors**") filed a joint consent motion to intervene, which the Court granted.  Defendant-Intervenors also filed a reply to Plaintiff's response to the

motion to dismiss.  For the reasons that follow, the Court
denies Customs' motion to dismiss, and denies Plaintiff's motion
for a preliminary injunction.

## I.    BACKGROUND

On October 29, 2002, Commerce issued an antidumping duty
order that applied to certain Canadian steel imports including
the Entries.  See Carbon and Certain Alloy Steel Wire Rod from
Canada, 67 Fed. Reg. 65944 (Oct. 29, 2002) (amended final
determination and antidumping duty order) ("**the Order**").  The
Order contemplated a default weighted-average dumping margin of
8.11 percent that applied to all manufacturers/exporters subject
to investigation that were not explicitly assessed a lower rate.
Specifically, the Order provided that all unliquidated entries
that entered on or after April 10, 2002, and before October 7,
2002, be assessed a duty rate of 8.11 percent.  See id. at
65945.  For all entries occurring "[o]n or after that date of
publication of [the Order] in the Federal Register, the Customs
service [was instructed to] require . . . a cash deposit equal
to the estimated weighted-average antidumping duty margins as
noted [in the Order]."[1]  Id.  Ispat Sidbec Inc. ("**Ispat**") was one

---

[1]  Entries made between October 7, 2002 and October 29, 2002 (the
publication date of the Order) were "not liable for the
assessment of antidumping duties due to [Commerce's] termination

of the Canadian steel manufacturers/exporters entitled to lower duty assessment and cash deposit rates. See id. Ispat was subject to a 3.86 percent assessment rate, as well as a 3.86 percent cash deposit rate. Id. In late 2004, Ispat changed its name to Mittal Canada Inc. Carbon and Certain Alloy Steel Wire Rod from Canada, 70 Fed. Reg. 22845 (May 3, 2005) (preliminary results of changed circumstances review) ("**Preliminary Results**"). On January 15, 2005, after noticing that Customs was subjecting its entries to the higher default rate of 8.11 percent, Plaintiff requested a changed circumstances review to take account of the name change.

On May 3, 2005, Commerce issued its preliminary review of Plaintiff's changed circumstance review request. The Preliminary Results stated that "Mittal is the successor-in-interest to Ispat." Id. Commerce also described to Plaintiff what consequences of a final results affirmance would be:

> If the above preliminary results are affirmed in [Commerce's] final results, the cash deposit rate most recently calculated for Ispat will apply to all entries of subject merchandise by Mittal entered, or withdrawn from warehouse, for consumption on or after the date of publication of the final results of this changed circumstances review.

Id.

---

of . . . the suspension of liquidation." Order, 67 Fed. Reg. at 65945.

Commerce's final determination affirmed the Preliminary Results.  See Carbon and Certain Alloy Steel Wire Rod from Canada, 70 Fed. Reg. 39484 (July 8, 2005) (final results of changed circumstances review) ("**Final Results**").  Specifically, Commerce determined that "Mittal is the successor-in-interest to Ispat for antidumping duty cash deposit purposes."  Id. at 39485.  The Final Results contained a section entitled "Instructions to the U.S. Customs and Border Protection" that appeared immediately after its finding as to the successor-in-interest issue.  In that section, Commerce stated its intention to follow the course indicated by the Preliminary Results: "[Commerce] will instruct [Customs] to suspend liquidation of all shipments of the subject merchandise produced and exported by Mittal entered, or withdrawn from warehouse, for consumption, on or after the publication date of this notice at 3.86 percent (i.e., Ispat's cash deposit rate)."  Id.

On July 25, 2005, Customs published Commerce's instructions to notify its directors of field operations and port directors.  See Def.'s Corrected Mot. to Dismiss and Resp. in Opp. to Mot. for Prelim. Inj., Attach. A (Message No. 5206202 dated July 25, 2005).  Those instructions provided that "as a result of [the changed circumstances] review, [Commerce] find[s] that Mittal Canada Inc. is the successor in interest to Ispat Sidbec Inc."

Id.  The instructions provided further that "shipments by Mittal Canada Inc. of carbon alloy and certain steel wire rod from Canada shall receive the same cash deposit rate as Ispat Sidbec Inc., for all shipments entered or withdrawn from warehouse, for consumption on or after July 8, 2005."  Id.  Therefore, these cash deposit instructions did not apply to the Entries, which had already entered and for which cash deposits had already been collected.

On December 15, 2005, Customs issued the instructions to its port directors that constitute the nub of this dispute.  The port officials were "to assess antidumping duties on merchandise entered, or withdrawn from warehouse, for consumption at the cash deposit or bonding rate in effect on the date of entry." Mem. in Supp. of Pl.'s Mot. for a TRO and Prelim. Inj. Enjoining Liquidation of Entries, Ex. A (Message No. 5349202 dated Dec. 15, 2005) at 1.  For the Entries, "the cash deposit . . . rate in effect on the date of entry," id., was the higher 8.11 percent rate.  On December 27, 2005, Plaintiff sent a letter to the Commerce's Assistant Secretary for Import Administration requesting that Commerce instruct Customs to assess antidumping duties at no greater than 3.86 percent, the rate to which Ispat imports were formerly entitled, and, according to Plaintiff, to which Plaintiff's imports were entitled as well.  See id., Ex. B

(Letter to Ass. Sec. of Imp. Admin. Re: Request for Correction of Instructions to Customs/Mittal Canada, Inc. dated Dec. 27, 2005).

Plaintiff then commenced this case on December 30, 2005, petitioning the Court for a TRO and preliminary injunction to stop Customs from liquidating the Entries.  In its accompanying memorandum, Plaintiff cited Mukand Int'l, Ltd. v. United States, 29 CIT ___, ___, Slip Op. 05-164, at 15 (Dec. 22, 2005) to support its position that a TRO was necessary to prevent the imminent liquidations, because liquidation would strip the Court's jurisdiction under 28 U.S.C. § 1581(i) to hear Plaintiff's challenge to the instructions.  The Court entered the TRO on the same day as a precaution, and ordered a hearing on the maintenance of the TRO and imposition of the preliminary injunction on January 4, 2006.

Customs filed a motion to dismiss for lack of jurisdiction as well as its response to Plaintiff's motion for preliminary injunction on January 3, 2006.  The Court held the hearing as scheduled, after which the parties agreed to an expedited briefing schedule.

## II.  THE COURT HAS JURISDICTION UNDER 28 U.S.C. § 1581(i)

Absent jurisdiction, a court may not proceed in any cause, and must dismiss the case before it.  "The requirement that

jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" Steel Co. v. Citizens for a Better Envm't, 523 U.S. 83, 94-95 (1988) (quoting Mansfield, C. & L. M. R. Co. v. Swan, 111 U.S. 379, 384 (1884)); see also USCIT R. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

Moreover, the fact that Plaintiff desires preliminary and equitable relief does not mean a court can sidestep the jurisdictional question. In circumstances when the jurisdictional inquiry is inextricably intertwined with consideration of the merits, it may be appropriate for a court to postpone adjudication of the jurisdictional question pending a thorough examination of the merits. See, e.g., PPG Indus., Inc. v. United States, 84 Cust. Ct. 256, C.R.D. 80-5 (1980) (merger of jurisdictional and merits inquiries is appropriate where "the evidentiary facts necessary to controvert the jurisdiction challenged by the defendant concurrently are necessary in the submission and ultimate determination of the . . . action on the merits"). In this case, however, subject matter jurisdiction is not inextricably tied to a proper test of the strength of Plaintiff's claim, and merger of the

jurisdictional and merits questions is inappropriate.  Instead,

jurisdiction is properly treated as a threshold issue, to be

examined separately and antecedently.

Plaintiff invokes the residual jurisdiction of the U.S.

Court of International Trade ("**CIT**") under 28 U.S.C. § 1581(i).

By its terms, 28 U.S.C. § 1581(i) is an expansive grant of

exclusive jurisdiction over certain causes of action against the

government:

> [The CIT] shall have exclusive jurisdiction of any civil
> action commenced against the United States, its agencies,
> or its officers, that arises out of any law of the United
> States providing for—
>
>> (1)  revenue from imports or tonnage;
>>
>> (2)  tariffs, duties, fees, or other taxes on the
>>      importation of merchandise for reasons other than
>>      the raising of revenue;
>>
>> (3)  embargoes or other quantitative restrictions on
>>      the importation of merchandise for reasons other
>>      than the protection of the public health or
>>      safety; or
>>
>> (4)  administration and enforcement with respect to
>>      the matters referred to in paragraphs (1)-(3) of
>>      this subsection and subsections (a)-(h) of this
>>      section.

28 U.S.C. § 1581(i) (1999).

A lodestar of the CIT's jurisdictional jurisprudence is

that a plaintiff may not pursue an action under 28 U.S.C. §

1581(i) if any other subsection of 28 U.S.C. § 1581 "is or could

have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987), cert. denied, 484 U.S. 1041 (1988). Thus, if Plaintiff could have obtained its relief under any other subsection of 28 U.S.C. § 1581, then the Court must immediately dismiss the case for lack of subject matter jurisdiction.

Before the Court may assert jurisdiction over the subject matter, it must identify the claim on which Plaintiff seeks relief. In most cases, this exercise is routine; however, this case requires a more searching examination because the parties disagree as to the characterization of Plaintiff's claim. Plaintiff contends it is challenging Commerce's liquidation instructions as arbitrary and capricious or otherwise not in accordance with law. Customs paints Plaintiff's request in a different light, arguing that Plaintiff is really seeking a substantive review of the changed circumstances review.

Plaintiff believes that Commerce's liquidation instructions, because they instructed Customs to liquidate the Entries at the cash deposit rate, failed to take into account the legal fact that "Mittal is the successor-in-interest to Ispat for antidumping duty cash deposit purposes." Final Results, 70 Fed. Reg. at 39485. Plaintiff insists that, despite

the Final Results' expressly limited application to "antidumping duty cash deposit purposes[,]" id., the determination of successor-in-interest status required Commerce to assess the lower 3.86 percent rate to all of Plaintiff's unliquidated entries, including those for which the 8.11 percent duty cash deposit had been required.  In Plaintiff's view, then, the Final Results articulated a broad legal principle that has collateral effects beyond the express limitation of its language, and when Commerce does not recognize those effects and instruct Customs accordingly, it acts in contravention of law.

Customs, on the other hand, urges the Court to construe Plaintiff's complaint as a belated attempt to obtain the judicial review of the changed circumstances review that would have been available under 28 U.S.C. § 1581(c).  In other words, Customs argues that Plaintiff is attempting to dress up a routine § 1581(c) claim in such a way as to avoid § 1581(i)'s jurisdictional bar in cases where 28 U.S.C. § 1581(c) was available, but not invoked.

The language of 28 U.S.C. § 1581(i) fits Plaintiff's version of the case like a glove.  After all, 28 U.S.C. § 1581(i)(4) includes civil actions against the United States relating to the "administration and enforcement" of "duties." 28 U.S.C. § 1581(i)(4) (1999).  Moreover, several decisions of

the U.S. Court of Appeals for the Federal Circuit ("**Federal Circuit**") establish that a plaintiff may invoke 28 U.S.C. § 1581(i) to test the legality of instructions that are alleged to contravene determinations made in an administrative review. See, e.g., Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1305 (Fed. Cir. 2004); Consol. Bearings Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003); cf. Mitsubishi Elecs. Am. v. United States, 44 F.3d 973, 977 (Fed. Cir. 1994) (suggesting that CIT had jurisdiction to hear plaintiff's claim that liquidation instructions conflicted with final antidumping order). In those cases, the Federal Circuit has affirmed that the CIT possesses residual jurisdiction to hold Commerce accountable for the execution of its determinations arising from administrative reviews.[2] Residual jurisdiction is appropriate in

---

[2] The cited cases dealt with non-compliance with administrative reviews, which violated explicit regulatory and statutory provisions requiring the results of administrative reviews to be "the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties." 19 U.S.C. § 1675(a)(2)(C) (1999); see also 19 C.F.R. § 351.212(b)(1) (2005). Under 19 C.F.R. § 351.221, the general regulation governing review procedures, the same principle applies to changed circumstances reviews. That regulation directs Commerce to "promptly after publication of the notice of final results instruct the Customs Service to assess antidumping duties . . . on the subject merchandise covered by the review . . . ." Id. § 351.221(b)(6). If Commerce fails to instruct Customs accordingly, it withholds or delays the execution of its administrative duty, and the CIT

those cases because a challenge to liquidation instructions as not in accordance with an administrative review determination is not enumerated among the "reviewable determinations" of 19 U.S.C. § 1516a that form the basis for the CIT's 28 U.S.C. § 1581(c) jurisdiction.  See 19 U.S.C. § 1516a(a)(2)(B) (1999).

On the other hand, it is equally straightforward that should the Court construe Plaintiff's claim as a belated request for judicial review of the Final Results, the case must be dismissed.  28 U.S.C. § 1581(c) grants the CIT "exclusive jurisdiction of any civil action commenced under [19 U.S.C. § 1516a]."  28 U.S.C. § 1581(c) (1999).  19 U.S.C. § 1516a, in turn, permits plaintiffs to seek review of "[a] final determination . . . under [19 U.S.C. § 1675]."  19 U.S.C. § 1516a(a)(2)(B)(iii) (1999).  One of the "final determinations" that Commerce makes under 19 U.S.C. § 1675 is a review "based on changed circumstances."  Id. § 1675(b).  Therefore, because Plaintiff could have brought the matter before the Court under 28 U.S.C. § 1581(c), the Court would have no residual jurisdiction over such a claim.

A thorough examination of Plaintiff's motion for preliminary injunction and accompanying papers reveals that

---

must compel the issuance of correct instructions, see 5 U.S.C. § 706(1) (1999).

Plaintiff is challenging the liquidation instructions as violative of the legal conclusion, embodied in the Final Results, that Plaintiff is the a successor-in-interest to Ispat. Because the Court has 28 U.S.C. § 1581(i) jurisdiction over civil actions that challenge Commerce's issuance of liquidation instructions at odds with its own determinations, see Consol. Bearings, 348 F.3d at 1002, the Court must deny Customs' motion to dismiss for lack of subject matter jurisdiction. In short, Plaintiff is not challenging the Final Results, so there can not be, nor could there ever have been, jurisdiction under 28 U.S.C. § 1581(c). Instead, this suit is about the "'administration and enforcement' of those final results." Id. (quoting 28 U.S.C. § 1581(i)).

The only puzzling aspect of the jurisdictional question is Plaintiff's prior decision not to contest the Final Results before such an appeal became time-barred.[3]  Instead of timely

---

[3]  A plaintiff has thirty days after the date of publication of a Commerce determination in the Federal Register within which to contest that determination in the CIT. See 19 U.S.C. § 1516a(b) (1999). As such, Plaintiff had until August 8, 2005 to commence a case under 28 U.S.C. § 1581(c). Furthermore, Plaintiff slept on its rights by not filing a case brief, see 19 C.F.R. § 351.309(c)(ii), within thirty days after publication of the Preliminary Results on May 3, 2005. The Preliminary Results were clear: the changed circumstances review looked only to the cash deposit rate, and not the assessment rate. At both those points, Plaintiff could have brought to Commerce's attention that it was seeking a more robust form of retroactive relief.

contesting the Final Results in the CIT so as to obtain clear language that would have mandated assessment of the 3.86 percent duty rate, Plaintiffs are now alleging Commerce's liquidation instructions contravene the Final Results determination.  That argument in effect maintains that the uncontested and unambiguous Final Results mean something different than what they say.  Clearly, the Court possesses residual jurisdiction over such a novel argument, but Plaintiff's victory on the jurisdictional issue is pyrrhic.

Since 28 U.S.C. § 1581(c) relief was time-barred, Plaintiff has chosen to pursue another remedial method designed to obtain the identical substantive result (i.e., assessment of duties at 3.86 percent) by different means.  By fashioning its dispute as a challenge to defective liquidation instructions, Plaintiff has defined its claim such that the Court has jurisdiction.  In the process, however, it has presented a tenuous argument that, for the following reasons, would make preliminary injunctive relief inappropriate.

### III. <u>PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION IS DENIED</u>

A preliminary injunction is "extraordinary relief," FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993), that should be granted sparingly.  However, there are circumstances that can, and often do, justify injunctive relief before trial.

A court may enter a preliminary injunction when the movant has established (1) that it will suffer irreparable harm if relief is not granted; (2) that the public interest would be better served by the relief requested; (3) that the balance of the hardships tips in the movant's favor; and (4) that the movant is likely to succeed on the merits at trial.  See id. (citing Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983)).

In deciding whether to grant a preliminary injunction the CIT has a good deal of discretion.  See id. (citing Chrysler Motors Corp. v. Auto Body Panels, Inc., 908 F.2d 951, 953 (Fed. Cir. 1990)); Asociación Colombiana de Exportadores de Flores v. United States, 916 F.2d 1571, 1578 (Fed. Cir. 1990).  Courts have adopted a flexible approach in dealing with motions for preliminary injunctions.  In some instances, the weakness of a showing of one factor may be overborne by the strength of others.  See FMC Corp., 3 F.3d at 427.  In other circumstances, the weakness of a showing of one factor may justify denial of the preliminary injunction motion.  Id.

In particular, the likelihood of success and the irreparable harm prongs "are viewed as a 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'"  U.S. Ass'n of Imp.'s of Textiles

and Apparel v. U.S. Dep't of Commerce, 413 F.3d 1344, 1347 (Fed.

Cir. 2005) (quoting Mikohn Gaming Corp. v. Acres Gaming, Inc.,

165 F.3d 891, 895 (Fed. Cir. 1998)).  Thus, a convincing

demonstration of irreparable harm will diminish the required

burden of showing a likelihood of success on the merits.  When

irreparable harm is shown, a party need not show a likelihood of

success; a showing of "a fair chance" of prevailing on the

merits may entitle the moving party to preliminary injunctive

relief.[4]  See Atari Games Corp. v. Nintendo of Am., Inc., 897

F.2d 1572, 1577 (Fed. Cir. 1990).

Diminishing the burden of proof required does not, however,

obviate the movant's burden to show some real possibility of

success on the merits.  See FMC Corp., 3 F.3d at 427.  A court

may not enter a preliminary injunction, even where the

---

[4]  The U.S. Association of Importers decision adverts the CIT to
an ambiguity in the preliminary injunction jurisprudence.  See
U.S. Ass'n of Imp.'s, 413 F.3d at 1347-48.  In particular, it is
unclear what precedential weight the Mikohn and Atari Games
decisions, which were patent cases applying Ninth Circuit law,
have in the context of CIT cases.  As a result, it is unclear
whether the "fair chance" standard should apply to customs and
trade plaintiffs seeking preliminary injunctions against the
government.  Because the Court concludes that Plaintiff has
failed to meet its burden even under the liberal "fair chance"
standard, this ambiguity does not affect the disposition of
Plaintiff's motion.

irreparable harm is conspicuous and serious,[5] if the court is convinced that the movant stands no chance of success on its underlying claim.  See AM Gen. Corp. v. DaimlerChrysler Corp., 311 F.3d 796, 804 (7th Cir. 2002) ("A party with no chance of success on the merits cannot attain a preliminary injunction."); Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 417 (4th Cir. 1999).

In this case, the Court is unable to grant a preliminary injunction because Plaintiff has failed to meet its burden to show either a "likelihood of success on the merits," U.S. Ass'n of Imp.'s, 413 F.3d at 1346, or even a "fair chance" that its

---

[5]  The Court ultimately denies the motion for preliminary injunction because Plaintiff stands little, if any, chance on the merits of its underlying claim, so its decision would be the same even if irreparable harm were present.  However, it bears mention that irreparable harm is not present in this case either.  Plaintiff's alleged harm — its losing a statutory right to obtain judicial review of the liquidation instructions upon liquidation — is illusory.  The Federal Circuit has held that in cases where a plaintiff brings a suit challenging liquidation instructions' compliance with Commerce determinations, the CIT has 28 U.S.C. § 1581(i) jurisdiction to evaluate such a claim, even where the relevant entries are liquidated during the pendency of the case.  See Shinyei, 355 F.3d at 1297-1303. Plaintiff's reliance on Zenith Radio is misplaced because in that case, the denial of preliminary injunctive relief would have foreclosed relief to which the plaintiff was otherwise entitled: namely, its right to have a favorable CIT decision apply to its already-entered merchandise.  In this case, as in Shinyei, Plaintiff has already preserved its 28 U.S.C. § 1581(i) challenge to the liquidation instructions.  As such, denial of the preliminary injunction should not disturb Plaintiff's ability to challenge the instructions after liquidation, and Plaintiff is not threatened with serious harm.

underlying claim will succeed, id. at 1347. Even after extensive briefing, Plaintiff has provided no support for its novel contention that a final changed circumstances determination finding that one producer is the successor-in-interest to another producer "for antidumping duty cash deposit purposes," Final Results, 70 Fed. Reg. at 39485, articulates a broader commitment by Commerce to treat that producer as such for duty assessment purposes as well. "[M]ere novelty is [not] sufficient to demonstrate a fair chance of success" on the merits of a claim. U.S. Ass'n of Imp.'s, 413 F.3d at 1347.

A close look at the U.S. antidumping duty assessment regulations and procedures demonstrates why the Final Results limited the application of the successor-in-interest determination to cash deposits, and why therefore Plaintiff's argument that Commerce was obliged to include assessment instructions is untenable. The United States utilizes a "retrospective" duty assessment system under which importers' final liabilities are determined after the actual importation of the merchandise. See 19 C.F.R. § 351.212 (2005). Importers entering merchandise subject to an antidumping duty order are required to make a cash deposit of estimated antidumping duties at the rates included in the final results determination of an antidumping investigation. See id. § 351.211(b)(2). Unless the

importer files a request for an administrative review,[6] those entries will be liquidated (and those duties will be assessed) at the deposit rate that applied at the time the merchandise was entered.  See id. § 351.212(a).  Commerce processes these entries by issuing "clean-up" instructions, see Shinyei, 355 F.3d at 1303, directing Customs to liquidate all unliquidated entries "as entered."  This process is referred to as "automatic liquidation," see Okaya (USA), Inc. v. United States, 27 CIT ___, ___, Slip Op. 03-130 at 3 (Oct. 3, 2003), and ensures the smooth functioning of the "retrospective" system.  Notably, there is no analogous exception to automatic liquidation for changed circumstance reviews.  See 19 C.F.R. § 351.212(b).

An importer may request an administrative review when it believes the cash deposit rate collected at entry should not be the assessment rate.  The administrative review typically looks backward twelve months, see id. § 351.213(e), and permits an importer to recoup the excess duties deposited by halting the automatic liquidation process and allowing Commerce to take account of specific information provided by the importers requesting the review.  The duty collection system is imprecise and relies on efficient transfer of information from interested

---

[6]  Two other exceptions exist for new shipper reviews, see 19 C.F.R. § 351.214, and expedited antidumping reviews, see id. § 351.215.  Neither procedure is relevant to this case.

parties to Commerce to achieve an accurate final result; to this end, the administrative review process is "the most frequently used procedure" for apprising Commerce of relevant facts needed to "determin[e] final duty liability[.]"  Id. § 351.213(a).  The regulations also provide guidance for Commerce in computing new assessment rates and instruct Customs to liquidate at those rates the merchandise subject to administrative review.  See id. § 351.212(b).

The changed circumstances review similarly allows interested parties to petition Commerce for review of a final determination.  See 19 U.S.C. § 1675(b)(1) (1999).  The party seeking a revocation or modification of an antidumping order bears the burden of persuasion with respect to whether changed circumstances warrant such revocation or modification.  See id. § 1675(b)(3)(A).  Most important for the purposes of this case, however, is the fact that unlike an administrative review, a changed circumstances review does not halt the automatic liquidation process by causing Commerce to recalculate assessment rates in the case of an affirmative determination. In the past, Commerce has modified assessment orders during changed circumstances reviews.  See, e.g., Leather from Argentina, Wool from Argentina, Oil Country Tubular Goods from Argentina, and Carbon Steel Cold-Rolled Flat Products from

Argentina, 62 Fed. Reg. 41361 (Dep't Commerce Aug. 1, 1997) (final results of changed circumstances reviews) (providing retroactive relief by ordering all unliquidated merchandise entered within six years of publication date to be liquidated without regard to the countervailing duty orders then in place). However, such modification of assessment rates does not arise automatically as a result of a changed circumstances review; an interested party must make a specific demand that Commerce instruct Customs to assess different rates for entries as to which estimated duties have already been deposited.

In this case, Plaintiff made no such demand. Plaintiff "requested that [Commerce] determine that it had become the successor-in-interest of Ispat[.]" Preliminary Results, 70 Fed. Reg. at 22845. Commerce, in its Preliminary Results, unambiguously limited the scope of the changed circumstances review to cash deposit rates, and never addressed the possibility that merchandise entered before the changed circumstances review was entitled to the lower Ispat assessment rate: "If the above preliminary results are affirmed in the Department's final results, the cash deposit rate most recently calculated for Ispat will apply to all entries of subject merchandise by Mittal entered, or withdrawn from warehouse, for consumption on or after the date of publication of the final

results of this changed circumstances review." Id. (emphasis added).

The Final Results also focused exclusively on the narrow issue of cash deposit rates: "Based on the information provided by Mittal, and the fact that the Department did not receive any comments during the comment period following the preliminary results of this review, the Department hereby determines Mittal is the successor-in-interest to Ispat for antidumping duty cash deposit purposes." 70 Fed. Reg. at 39485 (emphasis added). Commerce then indicated its intention to

> instruct [Customs] to suspend liquidation of all shipments of the subject merchandise produced and exported by Mittal entered, or withdrawn from warehouse, for consumption, on or after the publication date of this notice at 3.86 percent (i.e., Ispat's cash deposit rate). This deposit rate shall remain in effect until publication of the final results of the ongoing administrative review . . . .

Id. Both the Preliminary Results and Final Results plainly address the treatment of Plaintiff's cash deposit rate, and not its assessment rate.

There are no broader conclusions to be divined out of the pellucid Final Results. The changed circumstances review addressed the cash deposit rate treatment of Plaintiff's merchandise. It seems Plaintiff came to an idiosyncratic interpretation of the Final Results, did nothing to convince Commerce of the correctness of such an interpretation, and

assumed that Commerce would do something equally idiosyncratic by adopting Plaintiff's interpretation. Plaintiff could have petitioned Commerce for a more explicit form of retroactive duty assessment for already-entered merchandise; instead, it acquiesced to the Final Results' implicit refusal to grant any such relief. Of course, the automatic liquidation instructions eventually arrived for the Entries, and now Plaintiff is seeking to vindicate its erroneous interpretation before the Court.

Because the changed circumstances review did not address the treatment of the Entries at the time of duty assessment, the automatic liquidation system required that duties be assessed at "the cash deposit rate applicable at the time merchandise was entered[,]" 19 C.F.R. § 351.212(a), which was 8.11 percent. These liquidation instructions were in harmony with the statutory and regulatory requirements regarding the assessment of antidumping duties. Because Plaintiff stands little, if any, chance of prevailing on its underlying claim, the Court must deny Plaintiff's motion for a preliminary injunction.

## IV.  CONCLUSIONS

In light of the foregoing considerations, Customs' motion to dismiss for lack of subject matter jurisdiction is denied. Plaintiff's motion for a preliminary injunction is also denied.

A separate order will issue in accordance with these
conclusions.


                                        /s/ Richard W. Goldberg
                                        **Richard W. Goldberg**
                                        **Senior Judge**

**Date:      February 10, 2006**
            **New York, NY**